## RAINEY vs. CAPPS.

1. The relation of landlord and tenant may be presumed from the conduct of the parties in reference to each other, and in respect to the lands which are the subject of the rent.

2. An agreement made on Sunday, for the rent of land, is void under the statute, and cannot be set up by either party as a contract; yet it may be looked to, in connection with other circumstances, to explain the character of the defendant's possession, and to account for the subsequent conduct of both parties in relation to the land: it may be proved as a declaration or admission on the part of the plaintiff, forming part of the *res gestæ*.

3. When a tenant is sued for unlawful detainer, it is not necessary, in order to make out his defence, that he should show all the terms of the contract of rent; it is sufficient, if he shows that he is in as the tenant of the plaintiff, for a term which is unexpired when the proceeding is instituted. If the holding for the entire term is, by the contract of lease, made to depend upon some act to be done by him before its commencement or during its continuance, the plaintiff must show this, and if he fail to do so, and to insist upon it, he will be held to have waived it.

ERROR to the Circuit Court of Dallas.
Tried before the Hon. ROBT. DOUGHERTY.

Rainey commenced a proceeding under the statute for unlawful detainer, against Capps, before a justice of the peace. On the trial, a judgment was rendered for the defendant, from which the plaintiff appealed to the Circuit Court.

On the trial in that court, as appears by the bill of exceptions, it was proved that the land in controversy was possessed by one Jackson for several years, who sold it to plaintiff and one McElroy, and delivered to them the possession; that while plaintiff and McElroy were so possessed, they rented the premises in dispute to the defendant and one Jones, to be

used by them as a brick yard for making and burning bricks, during the year 1850; that during this year the plaintiff bought out the interest of McElroy in the premises; that some time in the month of December, 1850, defendant and Jones made a contract with the plaintiff, by which they rented the premises for the year 1851 at $65 per annum; that defendant remained in possession until the last of March, 1851; that Jones had withdrawn from the business of brick making, and the defendant was alone in possession; that between the first of January and last of March, 1851, the defendant had dug up clay enough to make thirty or forty thousand brick, had cut a large quantity of wood to burn them, and had hauled poles and boards to make shelters, &c.; that plaintiff was a practising physician, residing within a half mile of the brick yard, and had loaned the defendant his wagon to haul the poles and boards aforesaid; that Jones had never informed the plaintiff that he had withdrawn from the business of making brick; that the defendent, about the last of March, 1851, tendered the plaintiff his note for $65, with Jones as security, for the rent agreed on for the year 1851; plaintiff refused to receive it, and gave the defendant notice to quit, which he refused to do; that the contract for rent for the year 1851 was made on Sunday; that Jones, without the knowledge or consent of the plaintiff, had agreed with the defendant to let him have the brick yard. It was also proved, that the defendant was solvent; that the note tendered was good, and the brick yard was on a public road. This was all the evidence in the case, and the court charged the jury:

1. That if they believed, from the evidence, that the contract between the plaintiff and Jones and the defendant was made on Sunday, it was void;

2. That although that contract might be void, yet, if they found from the evidence that the defendant remained in possession of the brick yard alone, and without Jones, from the first of January, 1851, to the last of March of that year, making preparations for brick making, and plaintiff knew he was proceeding alone, and they must look to the evidence showing his means and opportunity of knowing, then the law would imply a contract between the plaintiff and defendant for the rent of the brick yard for the year 1851, and the

plaintiff could not recover. To this charge the plaintiff excepted.

The plaintiff then asked the court to charge:

1. That if Jackson had possession, and sold to Rainey & McElroy, and Rainey kept possession afterwards, defendant holds unlawfully, and the plaintiff should recover, if he made demand of the possession, and gave notice to quit before suit was brought;

2. That if the defendant and Jones rented the premises from the plaintiff for the year 1851, neither Jones nor defendant had any right to rent them again without complying first with the contract with plaintiff;

3. That unless the jury find that the defendant is in possession under the same terms as in 1850, the plaintiff must recover, if before suit brought he gave the defendant notice to quit.

4. That under the facts of this case the plaintiff is entitled to recover.

These charges were refused, and the plaintiff excepted.

The errors here assigned are:

1. That the court erred in the second charge given;

2. It erred in refusing the several charges asked.

GAYLE & GAYLE, for plaintiff in error:

It must be remembered that the facts set out in the bill of exceptions are all that were in evidence. Under these the questions arise which the charge and the refusal to charge present.

1. The first charge refused was erroneous. The charge asked is founded upon the idea, that the contract for 1851 was void, as being made on Sunday, and that the defendant was in possession as a tenant at sufferance. The evidence shows this to be the true relation of the parties; at all events, the facts show that defendant was holding over, and the charge ought to have been given. See 1 Black. Com. cap. 9, p. 150; Clay's Dig. p. 250, § 5.

2. The second charge refused should have been given. It was a part of the contract for the rent of 1851 that Jones & Capps should give their joint notes, as shown by the evidence. While this contract was not complied with, Jones abandons

the contract to Capps without Rainey's knowledge, and Capps alone offers a note with Jones as security. Jones and Capps had no right to the premises, even for their own use, without complying with their contract. 2 Taunton p. 148; and therefore, after demand made by plaintiff, he ought to recover.

3. As to the third charge, the facts show that defendant is a tenant at sufferance, unless he shows that he is in possession under the same terms as in 1850; and even if he is not a tenant at sufferance, he is at least a tenant holding over under the rent of 1850, and therefore after demand made before suit by plaintiff, plaintiff ought to recover.

4th. The fourth charge should have been given, that under the facts of this case the plaintiff is entitled to recover.

The facts are plain, uncontradicted and not conflicting, and show defendant to be a tenant holding over and plaintiff entitled to recover. Paul v. Meek, 6 Ala. 753; Clements v. Loggins, 1 Ala. 623; Stewart v. Hood, 10 Ala. 600; Henderson v. Mabry, 13 Ala. 713; Gillespie v. Battle, 15 Ala. 276; Nelms v. Williams, 18 Ala. 650; Williams v. Shackelford, 16 Ala. 318; Boyd & Co. v. McIver, 11 Ala. 822.

LIGON, J.—The second affirmative charge of the court below forms the subject of the first assignment of error.

That charge in effect affirms, that the relation of landlord and tenant may be presumed from the conduct of the parties in reference to each other, and in respect to the lands which are the subject of the rent; and that if the facts of the case are such, in the estimation of the jury, as to exclude every other reasonable hypothesis, then the law will imply that the relation of landlord and tenant does, in fact, exist.

We do not think there is any error in this charge, when it is taken, as it must be, in reference to all the proof in this case. Every other relation in life may be presumed from circumstances, and the conduct of the parties; and we are unable to perceive any good reason why that of landlord and tenant should form an exception to the rule. Marriage, filiation, agency and a number of others may all be so established. But these circumstances may be explained, or rebutted by evidence of facts which tend to show that such relations do not, in truth, exist.

The fact of renting for a single year may as well be established by circumstantial evidence as any other, and if the declarations, conduct, and acts of the parties are such, that they cannot be reasonably accounted for on any other hypothesis, the law will presume that the relation of landlord and tenant exists between them.

Let us examine the facts of this case in reference to this rule. The testimony shows, that the plaintiff had rented the lands in controversy for the year 1850 to the defendant and Jones, to be used by them as a brick yard; that in the month of December of that year he made an agreement with them for the rent, for the same purposes, during the year 1851, stipulating the sum to be paid as rent money. This agreement, being made on Sunday, is void for immorality, and consequently neither party can set it up as an agreement; yet it may well be looked to as a circumstance, with others, to account for their after conduct in relation to the possession of the premises after the expiration of the first term of rent. On the first of January, 1851, the defendant still occupies the premises, devoting them to the same use to which he and his partner had applied them the year before. Jones withdraws from the business of brick making, but the defendant goes on to make all the arrangements necessary for their successful manufacture. The plaintiff lives within eight or nine hundred yards of the brick yard, at which Capps had been employed from the first of January until the last of March, digging up clay to make, and hauling poles and boards to shelter, some forty thousand bricks. In hauling the poles and boards he has the use of the plaintiff's wagon, and this, under a loan from him. Three months are thus spent by Capps in labor, directed to the manufacture of bricks, the use to which the lands had been previously applied. Can it be possible that these things could have happened without the plaintiff's knowledge? And knowing them, is it at all probable that he would have permitted them, if the relation of landlord and tenant had not existed between the parties for that year?

These facts tend strongly, if not conclusively, to prove the renting for the year 1851. And when the conduct of the parties is referred to what was said by them in December of 1850, the tenancy and term of the defendant are too well es-

tablished to be seriously doubted. He is not to be regarded as a tenant holding over from his former term, but as one who confessedly holds for a new term of one year; for the agreement made on Sunday, though void as such, may be looked to, in order to explain the character of the defendant's possession, and to account for the subsequent conduct of both parties in relation to the premises in dispute. It may be proved as the declarations or admissions of the plaintiff, which form a part of the *res gestæ*, and, we apprehend, the fact that these declarations or admissions were made on Sunday, would not impair or affect their character as evidence. Considered alone, they would confer no legal rights on the defendant, but taken in connection with the subsequent conduct of the parties, and the other facts of the case, they tend to explain the nature of the defendant's possession. These facts proved, and the law will presume that the relation of landlord and tenant existed between the plaintiff and defendant for the year 1851.

To enable the defendant to maintain his possession against the plaintiff, in a proceeding under the statute for unlawful detainer, it is not necessary that he should show all the terms of the contract of rent; it is sufficient, if he shows that he is in, as the tenant of the plaintiff, for a term which is unexpered, when the proceeding against him is instituted. If his holding for the entire term is, by the contract of lease, made to depend upon some act to be done by him before its commencement, or during its continuance, it is for the plaintiff to show it, and if he fail to do so, and to insist upon it, he will be held to have waived it.

If in this case the possession of the premises in dispute by the defendant for the year 1851 was, by the agreement under which he held, made to depend upon the fact, that Jones was to occupy them jointly with him, the plaintiff should have shown it by his proof; and since he has failed to do so, we cannot presume it, but must conclude, from the fact that he permitted the defendant to remain in the possession alone for one fourth of the term, that such a stipulation did not exist; or if it did exist, he waived it.

It is needless to review, with particularity, the charges asked by the plaintiff, and refused by the court. It is sufficient to

say, that the three first are inapplicable to the case when all the proof is considered, and if given, would have been well calculated to mislead the jury; while the fourth is directly repugnant to our view of the law of the case.

There was, therefore, no error in refusing them. And as we have seen that the charge given was unexceptionable, the judgment of the court below must be affirmed.