## CROSBY *vs.* HAWTHORN.

1. In proceedings had before a justice of the peace, preliminary to the issue of a warrant for a public offence, technical accuracy is not required: it is sufficient, if, giving to the language employed its usual and ordinary signification, it shows that an offence against the criminal law has been committed.
2. An affidavit charging the affiant's belief that the defendant "*was about to persuade, and trying to persuade, two of his* (affiant's) *hired slaves to leave his premises*," though informal, is substantially sufficient to justify a warrant against the defendant under the statute (Clay's Dig. p. 419, § 15,) forbidding any person to "*aid* any negro or other slave to run away or depart from his master's service." (Goldthwaite, J., *dissenting*.)
3. Although penal statutes are to be strictly construed, and cannot be extended by construction, yet they are not to be construed so strictly as to defeat the obvious intention of the Legislature.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. ANDREW B. MOORE.

TRESPASS VI ET ARMIS by Dennis Crosby, an infant suing by his next friend, against James A. Hawthorn, to recover damages for an assault and battery and illegal imprisonment. The defendant pleaded not guilty, and also justified under a warrant issued by a justice of the peace for the plaintiff's arrest; this warrant was issued on the affidavit of the said Hawthorn, charging " that he had good reason to believe, and did believe, that one Dennis Crosby was about to persuade, and was trying to persuade, two of his hired negroes to leave his premises." A demurrer to this plea of justification was overruled by the court, and this is now assigned for error.

WATTS, JUDGE & JACKSON, for the appellant, cited Duckworth v. Johnston, 7 Ala. 578, on the authority of which, they stated, they had brought trespass and not case.

GEO. W. STONE, *contra :*

1. The affidavit and warrant in this case charge Crosby with an attempt to commit the offence denounced in Clay's Dig. 419, § 15.

2. Every attempt to commit a felony, or even a misdemeanor, is itself a misdemeanor; and the offence is the same,

whether the felony or misdemeanor be created by statute or exist at common law.—Rex v. Higgins, 2 East 5 ; Rex v. Phillips, 6 *ib.* 464 ; 1 Russ. on Crimes, 46-7 ; Rex v. Harris, 6 Car. & P. 129, (25 Eng. Com. Law 315) ; Rex v. Butler, 6 *ib.* 368, (25 E. C. L. 441) ; Rex v. Roderick, 7 *ib.* 795, (32 Eng. C. L. 741) ; Commonwealth v. Harrington, 3 Pick. 27 ; 7 Conn. 266 ; 14 Ala. 603.

3. The pleas in this case show that the trespasses charged in the declaration consist alone in the arrest of appellant on a warrant which charged an indictable offence. In such case, if the injury be done, case, not trespass, is the remedy.

CHILTON, C. J.—The appellant sued the defendant, Hawthorn, for an assault and battery, and false imprisonment. The defendant pleaded the general issue, and two special pleas, which are substantially the same, and in which he avers that the injury complained of consists in the arrest of the plaintiff under and by virtue of a warrant issued by a justice of the peace, on the affidavit of the defendant, that he had just reason to believe, and did believe, that the said plaintiff "was about to persuade, and trying to persuade, two of his (defendant's) hired negroes to leave the said Hawthorn's premises." The pleas contain the usual specific averments, as to the identity of the supposed trespasses, and that no other or further force was employed, than such as was necessary to arrest and bring the said plaintiff before the justice for examination, touching the offence set forth in the affidavit. These special pleas were demurred to, and the court held them good. The overruling of the demurrers presents the sufficiency of the pleas as the only question for our consideration.

It is argued for the appellant, that the action of trespass may well be sustained for this arrest, because the proceeding before the justice was not for any offence known to the criminal law of the State, and was consequently *coram non judice*, and void. On the other hand, it is insisted that the affidavit *substantially* states that the plaintiff *attempted* to commit either a felony or misdemeanor, and that such attempt is itself an indictable offence, whether the felony or misdemeanor be created by statute or exists at common law.

The statute which it is alleged the affidavit shows an attempt to violate, reads as follows: "Any person who shall knowingly aid any negro or other slave to run away or depart from his master's service, such person, so offending, on conviction, shall suffer imprisonment in the penitentiary, not less than two, and not exceeding five years."—Clay's Dig. 419, § 15.

In preliminary proceedings of this nature, which are usually had before justices of the peace, technical accuracy cannot be expected, and is not required. It is sufficient, if, giving to the language employed its ordinary signification, the court may gather from it, that an offence against the criminal law has been committed or attempted. If such proceedings were to be subjected to the rigid rules of criticism, and all the constituent elements of the offence sought to be investigated, were required to be set forth in the affidavit or warrant with certainty, the administration of the criminal law would be greatly embarrassed, and offenders would often go unpunished, by reason of the hazard which the justice who issues, the party who procures, and the officer who executes the process for arresting them, would incur. We must be content to gather the meaning of the party from the affidavit, and disregard the want of technical accuracy of description. Bennett v. Black, 1 Stew. 39; 5 S. & P. 367; Ewing v. Sanford, 19 Ala. 605. Thus construed, we are of opinion that the affidavit, or information, was substantially sufficient to justify the warrant. To persuade the slave to leave, is "to aid him to depart;" for, by the term "aid," is comprehended all those appliances which may be resorted to as means to induce or assist a slave in running away. And, although persuading him to leave his master's *premises* is not technically the same as inducing him to quit his *service*, as he may leave his premises and still remain in his service, yet, as the expression is understood in common parlance, we understand it to mean, that Crosby was trying to persuade the slave to throw off the master's dominion and authority, by abandoning his premises, thus "departing from his service." This description of the offence, we concede, would be insufficient in an indictment; but, in respect to such preliminary proceedings, as we have said, a greater latitude of construction

is allowed. The warrant not being void, the case of Duck-worth v. Johnson, 7 Ala. 578, has no application.

That the attempt to commit a felony is an indictable offence, although the felony is not committed, is too well settled by the authorities to require argument; and the more modern cases concur in holding, that the soliciting or persuading another to commit a felony, nay, even a misdemeanor, is itself a misdemeanor.—See the cases collated in The King v. Higgins, 2 East 5; see, also, The King v. Phillips, 6 East 464, where it was held a misdemeanor to endeavor to provoke another to send a challenge to fight. In The Commonwealth v. Reuben Harrington, 3 Pick. 26, it was held, that letting a house to a woman of ill fame, knowing her to be such, with the intent that it should be used for purposes of prostitution, was an indictable offence at common law; and the doctrine was there asserted, that inciting, encouraging, and aiding a person to commit a misdemeanor, is itself a misdemeanor.— See, also, cases cited on the brief of appellee's counsel.

Upon the whole, we are of opinion that the warrant was not void, but the arrest was under valid process; and the action of trespass does not lie for the injury, conceding, as the demurrer does, the truth of the pleas.

It follows that the court committed no error in overruling the demurrers, and the judgment is consequently affirmed.

GOLDTHWAITE, J.—My opinion is, that the word "aid" in the statute (Clay's Dig. 419, § 16) is not used technically, but as the synonyme of "assist"; and that under the strict rules of construction applicable to penal statutes, we are not authorized to extend the meaning of the words beyond their ordinary and usual signification, in order to reach what we suppose to be the mischief of the statute. The term "aid," or "assistance," is, in its common acceptation, very different from "persuasion"; and although statutes against assisting prisoners to escape are found in England, as well as almost every State in the Union, we have been cited to no case, and have not been able to find any, in which persuasion has been held to be assistance within the meaning of these statutes. A convincing argument, to my mind, that the Legislature did not intend to use it in that sense, is, that in the next section

of the statute the offence of inducing a slave to leave the service of his master by persuasion merely, is stated and defined. The penal code is to be taken as a whole; and when it makes express provision in one part for the punishment of those who persuade a slave to leave with a certain intent, it is scarcely possible to escape the conclusion, that, had it been intended to include this act under the preceding section, the same or equivalent words would have been employed. It is better, in such cases, to stand upon the plain words of the statute, and to confine and limit the offence within the natural meaning of the words used, rather than, by forcing the language, to run the risk of creating by judicial construction an offence which the Legislature may never have contemplated.

Entertaining these views, I agree, that, in proceedings had before a justice of the peace, preliminary to the issue of a warrant for a public offence, technical accuracy is not required, and that it is enough if, giving to the language employed its usual and ordinary signification, it appears that an offence has been committed; but I do not agree that the words used would fairly imply the commission of the offence contemplated by the statute.

CHILTON, C. J.—The majority of the court readily concede that penal statutes are to be strictly construed, and cannot be extended by construction; for the law does not allow of constructive offences, or of arbitrary punishment. Hence the act which subjects a man to a punishment, must be within the letter and spirit of the statute which imposes the penalty.—Smith's Com. 861. But, although penal statutes are to be construed strictly, in the language of Marshall, C. J., in The United States v. Wilterberger, 5 Wheat. 76, "they are not to be construed so strictly as to defeat the obvious intent of the Legislature." This intention, he adds, "is to be collected from the words they (the Legislature) use."—See, also, 2 Peters 358; 2 Mass. 144; Paine's R. 209. A few examples from adjudged cases may serve to illustrate this position:

In the United States v. Morris, 14 Peters 464, by an act of Congress, (10th May, 1800,) it was made an indictable offence for any citizen of this country to serve on board of

any vessel of the U. States, " employed or made use of in the transportation or carrying of slaves from one foreign place, or country, to another," &c. ; and the defendant was indicted under the act. The question came up, whether a vessel on her outward passage to the coast of Africa, for the purpose of taking in a cargo of slaves, was "employed or made use of," within the contemplation of the statute, before any slaves were received on board. The court, Taney, C. J., delivering the opinion, held that, while penal statutes must be construed strictly, "yet the evident intention of the Legislature ought not to be defeated by an over strict construction" ; that to be employed in any thing, meant not only the act of doing it, but also to be engaged to do it,—to be under contract or orders to do it ; and the court concluded "that the voluntary service of an American citizen, on board a vessel of the United States, in a voyage commenced with the intent that the vessel should be employed and made use of in transporting or carrying slaves from one foreign country to another, was, in itself, and where no slaves had been transported in such vessel, or received on board, an offence under the statute."

So, also, in Commonweath v. Loring, 8 Pick. 370, the defendant was indicted under a statute, which made it an offence for any one, " not being authorized by the board of health, or the selectmen of any town, to dig up, or aid or assist in digging up any human body," &c. The indictment charged, that it was done without authority of the selectmen of the town where the body was buried ; but the statute said " any town". Considered without reference to the subject-matter and intention of the Legislature, and construed literally, the indictment should have averred that no town in the commonwealth had given authority ; but Parsons, J., while he admitted the general rule as we have stated it, said, that it did " not exclude the application of common sense to the terms made use of in the act, in order to avoid an absurdity which the Legislature ought not to be presumed to have intended" ; and he cites the authorities, to show that while penal statutes, as a general rule, are to be strictly construed, yet they are to receive such a construction as would conform to the intention of the Legislature,—Bac. Abr. Stat. 1, 9 ;

Heydon's case, 3 Coke 7 ; 8 Mod. 65 ; Plow. 86 ; Cro. Car. 71 ; see, also, 15 Wend. 147 ; Smith's Com. ch. 28, pp. 854 to 878, where the cases are collated.

These authorities may suffice to show, that in penal, as in all other statutes, we must not disregard the obvious meaning and intention of the Legislature ; but, when the expressions used may, without any strained interpretation, be so construed as to serve the manifest intent, it is the duty of the court so to construe them.—1 Story's Rep. 255 ; 1 Gal. 117 ; 13 John. Rep. 198.

Applying this well established principle of law to the statute before us, we deem it shorn of difficulty. It can scarcely be believed that while the general assembly, by a long course of legislation, have attempted so sedulously to guard the rights of the master over this species of property, and to protect his rightful dominion and authority over his slaves ; and while it is made a felony, which may be punished by fifty years imprisonment in the penitentiary, for any one, directly or indirectly, to persuade or induce any slave to leave his master's or mistress' service, with intent of escaping to some other country where he may enjoy his freedom, or to harbor or conceal such slave, with a knowledge of such intent to depart or escape as aforesaid ; that, while one who shall *entice* away any slave with a view of converting such slave to his own use, or the use of any other person, shall be imprisoned in the penitentiary not less than ten years, it should be no offence whatever for any one to procure by enticement or persuasion a slave to run away and throw off the dominion of his master. Such an omission would be as remarkable, as it would be, doubtless, in many instances, detrimental to the interest of the master. It would be leaving wide the door for the corrupting and disaffecting of the slave population of the State, by the vile or fanatical, with impunity, and would greatly depreciate the value, if not endanger the permanency of the institution itself. We repeat, it could hardly be conceived, how the learned gentlemen who drafted the penal code, with the Legislature who adopted it, as well as all the preceding and succeeding Legislatures, could have been guilty of such an oversight. Yet it is true that such omission exists, unless the inducing a slave to run away by persuasion or pre-

senting motives before his mind, is comprehended by the term
"*aid*." "Any person," says the statute, " who shall knowingly
aid any negro or other slave to run away or depart from his
master's service," &c.   Aid how, I ask ?   By money, or pro-
visions, or clothing ?   These might, in many cases, be far less
potent in inducing or aiding him to escape, than the use of
persuasion by language, poisoning his mind against his master,
exaggerating his supposed hardships, and impelling him to
throw off, if possible, his condition of servitude.   Does not one
more effectually aid a slave to depart from his master's ser-
vice, who produces in him the determination to do so, and en-
courages and incites him by promises of protection and assis-
tance to carry such intention into execution, than he who fur-
nishes him money enough to buy a meal's victuals, to aid him in
escaping from service ?   We think they are both guilty of
aiding him in the strictest sense of the statute.·   A majority
of the court, therefore, conclude, that one who procures a slave
to run away from his master by such means as beget and
strengthen the slave's determination to do so, whether it be
by furnishing him money, provisions, &c., or by promises of
such assistance, or protection, or, indeed, by any appliance de-
signed and calculated to bring about the result, is guilty of
aiding within the true intent and meaning of this act.   To aid,
is a very general term, and one less restricted would not have
answered the purpose, nor met the object of the Legislature.
It must be considered in its enlarged and legal sense, for in
this sense alone can it subserve the legislative intent.

Having attained this conclusion, the information and war-
rant, which states that the plaintiff below was "trying to per-
suade the slave to leave his master's premises," is an informal
effort to charge an attempt to commit the offence denounced
by the statute.   This warrant is informal, but not so wholly
foreign from the scope and purview of the statutory offence,
as to allow us, under the indulgence extended to such prelim-
inary proceedings, to declare it absolutely void.   Hence, the
case of Duckworth v. Johnson, cited by the appellant's counsel,
has no application.   In that case, the court could not gather
from the preliminary proceeding an intention to charge *any*
*offence :* it was, " that the defendant had property in his
hands in a fraudulent condition."   Here, if we are right in

our construction of the statute, the court may readily gather the intention to charge an *attempt* to commit the offence mentioned in the statute ; and, while we should not look to consequences in a plain case, yet, if we were doubtful as to the true construction of the warrant, we should lean to that which would protect the officers of the law and parties who may innocently seek to vindicate it from being trespassers, and to require the party who alleges he has been injured to adopt a form of action in which he must show malice as an essential element to his cause of action.

In view of the whole case, and after a careful investigation of it, a majority of the court, deeming the first opinion correct, adhere to it, and consequently overrule the motion for a re-hearing.