## No. 6154.

### STATE OF LOUISIANA VS. WILLIS HOLMES.

Defendant claimed the right to sell certain medicines under his license as a retail merchant without getting another license as a druggist. It is true that merchant means a dealer in merchandise, which general term has a very extended meaning, covering all articles of commerce, including medicines, yet it will not be denied that, although the Legislature requires a license as *retail merchant*, which probably means a retail dealer in any and all kinds of merchandise, it can still, from motives of public policy, require a special license of certain kinds of dealers, such as peddlers and hawkers, under the thirteenth division of the first section of act No. 14 of 1872, as well as of those who deal in certain kinds of merchandise, such as those who retail distilled liquors, sell medicines, keep a coffee, soda, or fruit stand, and many others.

The twenty-seventh division of the same section provides that every person having more than one shop, store, or other establishment, or who shall exercise or follow more than one trade, calling, and business, shall pay the tax on each separately.

Under the section aforesaid, if a retail merchant were to retail whisky, he would be liable to a bar-room-license; if he were to put up a soda fountain, or fruit-stand, or open a private market in his store, he would be liable for the extra license accordingly; if he were to send out goods for sale as a peddler, or if, in connection with the sale of clothing, he were to employ a tailor or tailors, and, furnishing the cloth, have clothes cut and made to order for sale, in the one case he would have to pay an extra license as a peddler or hawker, and in the other as a merchant tailor. The same rule will apply to the sale of drugs and medicines by a retail merchant, a special license being required therefor under the head of druggist.

APPEAL from the Parish Court, parish of Natchitoches. *P. A. Morse*, Special Judge. *M. J. Cunningham*, District Attorney, for plaintiff and appellee. *Wm. M. Levy* and *C. F. Dranguet*, for defendant and appellant.

TALIAFERRO, J. The district attorney of the Seventeenth Judicial District, acting upon a written notice furnished him by the tax-collector for the parish of Natchitoches, dated September 27, 1875, brought this suit against the defendant, alleging that, during the year 1875, the defendant was doing the business of a druggist in the city of Natchitoches without a license from the State, and that he is liable for the druggist's license of fifty dollars and the penalties prescribed by law for failure to pay the license. He prayed that an injunction issue restraining the defendant, Holmes, from selling drugs and medicines in the city and parish of

Natchitoches, and from prosecuting the business of a druggist until he pays for and takes out the license therefor of fifty dollars, as prescribed by the revenue laws of the State, and for citation and judgment against the defendant for fifty dollars as a druggist's license for the year 1875, and the penalties prescribed by law for having been engaged in the business of a druggist during the year 1875 without such license and for costs of suit. An injunction was issued as prayed for, but was dissolved on bond.

The defendant answered, denying that he has been doing the business of a druggist during the year 1875 and liable to pay the license required by law from persons engaged in the business of druggists. He avers that in the sale of certain articles, which are also sold by druggists, he did not compound drugs or medicines, or administer them, or counsel or advise their use as medicines; that they are articles generally used and sold by all country merchants, and not especially for medicinal use, or by the advice of physicians, and that under his merchant's license he had the right to sell the articles claimed to be drugs. He prays to be dismissed with his costs.

Judgment was rendered against the defendant for fifty dollars for having been engaged during the year 1875 in the business of a druggist without a license, and for the penalties incurred by him in so doing. The injunction restraining him from pursuing the business of a druggist without license was perpetuated. A motion for a new trial was overruled, and the defendant appealed.

It was admitted that the defendant had been during the year 1875 selling without license the following medicines in unbroken packages as he receives them from the wholesale dealers in New Orleans: Quinine in one-ounce, half-ounce, and quarter-ounce bottles; patent pills of all kinds; patent bitters of all kinds; castor oil, laudanum, paregoric, peppermint, spirits of nitre. Further admitted, that defendant breaks the packages received by him and retails by the ounce or otherwise as desired by customers the following medicines : Calomel, blue-mass, epsom salts, borax, gum camphor, and powdered sulphur. Admitted further, that defendant does not compound medicines or fill physicians' prescriptions, and that the medicines specified are generally sold by country merchants.

The defense in this case is placed mainly on the argument *ab inconvenienti*, and upon general custom. It is argued that in districts at a remote distance from towns and cities the practice of medicine would be of no beneficial use, unless country stores, under their merchant's license were permitted to sell such medicines as the defendant in this case sold, and which are looked upon by the whole civilized world as staple commodities; that the practice of selling medicines in this way by country

merchants is universal throughout the land; that this practice has grown into a custom from a long series of actions constantly repeated, and has acquired the force of a tacit consent. It is contended that under the fifteen-dollar license required from each wholesale or wholesale and retail merchant, and every retail merchant, according to act No. 14 of March 5, 1872, second division of section one, the defendant is entitled to sell medicines as it is admitted they are sold by him; that medicines thus sold by a retail merchant form part of the goods he is permitted under his license to sell, and that he can not on that account be reckoned in the category of druggists and be required to pay the druggist's license of fifty dollars.

It is not our province to consider the policy of the usage or custom referred to, yet we may be allowed to doubt whether this universal vending of medicines by persons for the most part ignorant and incompetent in such matters is not productive of as much evil as good to the community at large.

A brief and clear definition of the term "druggist," by a standard lexicographer, Dr. Webster, is that "druggist properly means one whose occupation is to buy and sell drugs without compounding or preparation." The term therefore has a much more limited and restricted meaning than the word apothecary, and we find little difficulty in concluding that the term druggist may be applied in a technical sense to persons who buy and sell drugs. A man may be a druggist in the sense of being a purchaser and vendor of medicines, whether he have a license as a druggist or not, although he can not legally deal in drugs (buying and selling) without a license. It was because the defendant pursued the business of buying and selling drugs during the year 1875 without procuring the license required by law; that is, by procuring a proper diploma and paying fifty dollars for it. Act No. 14, acts of 1872, seventeenth division of section one.

The reasoning of the district attorney on the subject, we think, has much force, and we are inclined to adopt it. He says: "Defendant claimed the right to sell these medicines under his license as a retail merchant. It is true that merchant means a dealer in *merchandise*, which general term has a very extended meaning, covering all articles of commerce, including medicines; yet it will not be denied that, although the Legislature requires a license as *retail merchant*, which probably means a retail dealer in any and all kinds of merchandise, it can still, from motives of public policy, require a special license of certain kinds of dealers, such as peddlers and hawkers, under the thirteenth division of the first section of act No. 14 of 1872, as well as of those who deal in certain kinds of merchandise, such as those who retail distilled liquors, sell medicines, keep a coffee, soda, or fruit stand, and many others. The

twenty-seventh division of the same section provides that every person having more than one shop, store, or other establishment, or who shall exercise or follow more than one trade, calling, and business, shall pay the tax on each separately. Under this section, if a retail merchant were to retail whisky he would be liable for a bar-room license; if he were to put up a soda fountain, a fruit stand, or open a private market in his store, he would be liable for the extra license accordingly; if he were to send out goods for sale as a peddler, or, if in connection with the sale of clothing, he were to employ a tailor or tailors, and, furnishing the cloth, have clothes cut and made to order for sale, in the one case he would have to pay an extra license as a peddler or hawker, and in the other as a merchant tailor. The same rule will apply to the sale of drugs and medicines by a retail merchant, a special license being required therefor under the head of druggist."

Our conclusion is that the judgment of the lower court is correct, and it is ordered accordingly that it be affirmed with costs.