(77 South. 52)

STOLLENWERCK v. STATE. (2 Div. 176.) *

(Court of Appeals of Alabama. Nov. 13, 1917. Rehearing Denied Nov. 27, 1917.)

SUNDAY ☞5—KEEPING OPEN STORE—"DRUGGISTS."

The word "druggist," within Code 1907, § 7814, prohibiting "any person who, being a merchant or shopkeeper, druggists excepted," from keeping open store on Sunday, refers to the occupation and not the person, and a druggist cannot sell anything but drugs on that day. (Quoting Words and Phrases, "Druggist.").

Bricken, J., dissenting.

Appeal from Circuit Court, Hale County; B. M. Miller, Judge.

Clarence Stollenwerck was convicted of keeping open store on Sunday, and he appeals. Affirmed.

The defendant was indicted by the grand jury in two counts charging violation of the law in keeping open store on Sunday. The first count charged defendant with keeping open store on Sunday. The second charged that defendant, while operating a drug store, did keep same open on Sunday and sell soda water, tobacco, cigars, etc. The defendant demurred to the second count, assigning several grounds. The court overruled the demurrer, and the case was submitted to the court without a jury, upon an agreed statement of facts. Upon a consideration of the evidence by the court without a jury, the defendant was convicted, and from the judgment of conviction he appeals.

Among the facts agreed to, as shown by the record, appears the following:

"That the defendant is a druggist and owner and proprietor of a drug store in the city of Greensboro; that the defendant is a licensed pharmacist; that in said drug store the defendant regularly compounds prescriptions; that he keeps and did keep on Sunday, April 1, 1917, in stock in said drug store, drugs and medicines of various kinds, and a variety of other articles of various kinds, mentioned in said statement, including those set out in the second count of the indictment; that it is usual for drug stores to keep in stock the articles kept by the defendant; that on Sunday, April 1, 1917, he did keep said drug store open, compound prescriptions, and sell medicines and drugs, as well as other articles, from his said stock. It was further shown that in said store the defendant sold all kinds of druggist sundries, as well as soft drinks, such as Coca Cola, various kinds of lemonade, and ice cream."

R. B. Evins, of Greensboro, for appellant. W. L. Martin, Atty. Gen., for the State.

SAMFORD, J. For the purposes necessary to a consideration of this appeal, the statute claimed to have been violated is as follows:

"Any person who, being a merchant or shopkeeper, druggists excepted, keeps open store on Sunday," etc.

It will be observed that under this statute no specific article of merchandise is either prohibited or permitted to be sold. The statute is directed against all merchants or shopkeepers except druggists, and makes it a violation of the law for them to keep open store on that day. But for the statute against it, any merchant might open up a store or shop on the Sabbath day, and proceed to sell and offer for sale his wares and merchandise. Thus, for good and sufficient reasons, the Legislature has seen fit to prohibit all merchants and shopkeepers, except druggists, from continuing their traffic on the Sabbath day. If it were necessary, we might surmise why the Legislature made an exception in favor of druggists, but no surmise is necessary or left open to us. The law requires the court to strictly construe penal statutes, and where the meaning is plain and unambiguous the court cannot do otherwise than to construe them as they are written, and the courts of this state have declared "the Sunday laws must have a reasonable interpretation." Reid's Case, 53 Ala. 402, 25 Am. Rep. 627.

In Jebeles et al. v. State, 131 Ala. 43, 31 South. 377, Mr. Chief Justice McClellan has clearly defined the meaning of "keeping open store"; what that term means and what it involves. Under this statute, druggists are excepted from the operation of the law against keeping open store on Sunday, and therefore where a person is a druggist, and so long as he remains a druggist within the meaning of the law, he cannot be convicted for keeping open store on Sunday. The important question then is, Is the defendant, under the agreed statement of facts in this case, a druggist? The adjudicated cases in this state shed little or no light on this question, unless it may be said that the opinion in the case of Dixon v. State, 76 Ala. 89, is persuasive of the idea that the sale on Sunday is limited to that of drugs. In the Dixon Case, the exception was not involved, and in several, if not all, of the cases construing this statute, preceding the Dixon Case, the trials were had on charges excepting druggists.

Desiring to prevent the desecration of the Sabbath by prohibiting certain things to be done on that day, yet recognizing the frequent necessity of mankind for drugs, druggists are permitted to exhibit for sale and to sell their merchandise. In construing the statutory exceptions, the ordinary signification of the words used controls. 37 Cyc. 548; Commonwealth v. Marzynski, 149 Mass. 68, 21 N. E. 228. In R. C. L. and Words and Phrases, it is said:

"The term, 'druggist,' properly means one whose occupation is to buy and sell drugs without compounding or preparation." 9 R. C. L. 697; State v. Holmes, 28 La. Ann. 765, 26 Am. Rep. 110; Webster's Dictionary.

The calling of a druggist is not a profession but an occupation. As long as a man confines himself to the occupation or business of a druggist, he is protected by the exception, but when he extends his stock in trade beyond the buying and selling of drugs, he is in another occupation not contemplated by the exception. In construing an exception in a statute excepting bakers, the Supreme Court of Massachusetts held "the sales authorized to apply only to breads and viands baked by him" (Commonwealth v. Crowley, 145 Mass. 430, 14 N. E. 459), so that it is the occupation and not the individual that is excepted, and the individual is protected only so long as he stays within the confines of the occupation as defined by law. Many have more than one occupation, as in this case, a "druggist" and a "dealer in druggist sundries." In either or both he is a merchant. In one he is protected by the exception, in the other he is not. He cannot, by uniting both lines in the same building, place both under the protection of the exception. Penniston v. Newman, 117 Ga. 700, 45 S. E. 65. It could with more reason be insisted that the enlargement of the bounds removed the protection of the exception from both.

The foregoing conclusions are emphasized when we consider the origin of the Christian Sabbath as a holy day, and the consistent enactment of statutes by all Christian states to preserve it as a day of rest and one sacred to the Lord. And while we do not observe the same day of the week as that consecrated and set apart under the law of Moses, the idea of consecrating one day in seven is of divine origin, and while the carrying on of ordinary business on that day is not a violation of the common law, from the earliest period in the history of the law of England statutes have been in force to preserve the first day of the week as a holy day. Alabama is in line with all the rest of them, it being declared by the decisions of this state that the object of the Sunday laws is to prevent

vice and immorality. Rainey v. Capps, 22 Ala. 288. Lord Blackstone, in writing of the Sabbath, said:

"Profanation of the Lord's day is a ninth offense against God and religion punished by the municipal law of England. For, besides the notorious indecency and scandal of permitting any secular business to be transacted on that day, in a country professing Christianity, and the corruption of morals which usually follows is profanation, the keeping one day in seven holy, as a time of relaxation and refreshment, as well as for public worship, is of admirable service to a state, considered merely as a civil institution. It humanizes, by the help of conversation and society, the manners of the lower classes, which would otherwise degenerate into a sordid ferocity and savage selfishness of spirit; it enables the industrious workman to pursue his occupation in the ensuing week with health and cheerfulness; it imprints on the minds of people that sense of their duty to God so necessary to make them good citizens, but which, yet, would be worn out and defaced by an unremitting continuance of labor, without any stated time of recalling them to the worship of their Maker."

See Ringgold, Law of Sunday, page 40.

And Mr. Ringgold, in his work, supra, says:

"And there is no lack of American authorities which recognize the logical consistency of the English view, and adopt the same reasoning."

And again:

"The object of the English statute was to promote the due observance of the Lord's day, by putting a stop to unnecessary worldly labor and business, at least among the persons and classes enumerated, and others like them, whether such business and labor was open and public, or in private; and this, not only for the sake of public decency and order, but to withdraw a man's thoughts from secular concerns, and turn them to the duties of religion."

In line with these and with the common weight of authority both in this country and in England, we hold that rest and the public worship of Almighty God were the primary objects of the institution of the Sabbath, both as a divine and as a civil appointment. Ringgold, Law of Sunday, p. 46; Johnston's Case, 22 Pa. 102. We have carefully considered the cases cited in appellant's brief to the effect that statutes which are plain and unambiguous on their faces are not to be construed, but are to be given effect in the language and according to the language used by the Legislature in bringing them into existence. This court does not question that rule, but in view of all the authorities coming under our observation touching the proper construction of the word "druggist," as it appears in this statute, we are of the opinion that these cases have no application here.

The foregoing being our views, it follows that the views expressed in the original opinion were in error and therefore the original opinion in this case is withdrawn, the rehearing is granted, and the judgment is affirmed.

Affirmed.

BROWN, P. J. (concurring). The statute under which the indictment in this case was preferred provides:

"Any person who compels his child, apprentice, or servant to perform any labor on Sunday, except the customary domestic duties of daily necessity or comfort, or works of charity; or who engages in shooting, hunting, gaming, card playing, domino playing, or racing on that day; or who, being a merchant or shopkeeper, druggists excepted, keeps open store on that day, must, for the first offense, be fined not less than ten or more than twenty dollars," etc.

This statute seems to have originated in the Code of 1852, as sections 3302 and 3303, and the offense denounced thereby has been designated in the subsequent Codes as "Sabbath breaking" (Code of 1867, § 3614), "Sunday laws" (Code 1876, § 4443, Code 1886, § 4045), and "Sunday violation" (Code 1907, § 7814), and its manifest purpose is to preserve, in so far as is practicable, the "Christian Sabbath," as one of the institutions upon which our Christian civilization is pillowed.

The sentiment embodied in the statute is of divine origin, and finds expression in one of the commandments:

"Remember the Sabbath day, to keep it holy. Six days shalt thou labour, and do all thy work; but the seventh day is the Sabbath of the Lord thy God; in it thou shalt not do any work, thou, nor thy son, nor thy daughter, thy manservant nor thy maidservant, nor thy cattle, nor thy stranger that is within thy gates; for in six days the Lord made heaven and earth, the sea, and all that in them is, and rested the seventh day; wherefore the Lord blessed the Sabbath day, and hallowed it." Ex. xx, 8–11; Gen. ii, 2–3.

In the preamble to an act of the Legislature of Massachusetts of a kindred nature, we note the following:

" 'And whereas many persons are of opinion that the Sabbath, or time of religious rest, begins on Saturday evening; therefore, to prevent all unnecessary disturbance of persons of such opinion, as well as to encourage in all others a due and seasonable preparation for the religious duties of the Lord's day," be it enacted," etc. Province Laws 1760–61, c. 20, § 9.

And the Supreme Court of that state, in construing this statute, said:

"The Legislature intended by this statute to keep the ordinary places of traffic, business, and work closed on this day, so that those persons who desired to relax from labor and business, and attend private and public worship, might not be disturbed by persons pursuing their worldly business, and avocations, in open shop." Com. Dextra, 143 Mass. 28, 8 N. E. 756.

In Jebeles v. State, 131 Ala. 43, 31 South. 377, the Supreme Court, construing this statute, speaking by McClellan, C. J., said:

"This statute, in our opinion, sufficiently describes the offense intended to be denounced. The 'keeping of open store' implies something more than opening the door of a shop or store or keeping the door open. It involves the keeping open of the store as such, the opening up of the business carried on in the house, *the exposition to sale* of the wares stored there for sale. The words, in and of themselves, mean the opening up and keeping open the storehouse of goods, wares, and merchandise *for the purposes of traffic*." (Italics supplied.)

The statute is a recognition that it is the right of the citizen to observe and keep holy the Sabbath day, and that to allow the ordinary activities of everyday life, in seeking pleasure and gain, would obstruct Sabbath observance and tend to commercialize the Sabbath day.

In so far as it affects merchants or shop-keepers, it is directed against traffic or activities for gain, not because it is inherently wrong to sell an article or commodity of merchandise, but because the traffic tends to detract from serious Sabbath observance, and disturbs those who may desire to conscientiously observe the Sabbath as an act of divine worship.

If we assume that A. is engaged in the business of selling all such sundries, as are usually carried in a "well-regulated drug store," yet is not a "druggist," and therefore cannot sell drugs, while B., his neighbor, who is a "druggist," carries the same class of goods, and in addition a stock of drugs, the law says to A., you must close your business on the Sabbath, but B. may keep open and sell his goods, it does not require a great stretch of the imagination to see that this condition would tend to disturb A. in serious observance of the Sabbath. The law thus construed places A. at a disadvantage, and hazards the loss of his customers, while it permits B., prompted solely by a desire for gain, to pursue his usual daily activities in the prosecution of his business.

The question therefore is, Does the term "druggist," as used in the statute, refer to the person excepted, or is it descriptive of the business excepted? The Supreme Court has answered this question in the following language:

"The design of the statute is to prevent the traffic of merchandise as a business on the Sabbath, excepting only the sale of drugs." Dixon v. State, 76 Ala. 89.

Whether this utterance is mere dictum or not, it is undoubtedly a sound interpretation of the statute, and, as supporting it, we note as appearing in the Code of 1852, for the first time, the following statute, which might be said to be in pari materia with the statute under consideration, to wit:

"All druggists in this state are required to obtain a license to deal in drugs from a medical board of the county in which such business is pursued; or if there is no board in such county, then from the medical board established in the nearest county thereto; and any person violating the provisions of this section, on proof thereof, is not entitled to recover for any drugs or medicines he has sold, and is also guilty of a misdemeanor, and, on conviction, must be fined not less than one hundred dollars." Code 1852, § 980.

It is manifest that a person, though qualified to sell drugs, if he did not engage in the business, he could not be required to obtain a license, and it is equally clear that the term "druggist," as used in these statutes, is used in the restricted sense, and relates to the business of selling drugs, and not to a person qualified to engage in such business. Dixon v. State, supra; Com. v. Dale, 144 Mass. 363, 11 N. E. 534; Com. v. Crowley, 145 Mass. 430, 14 N. E. 459.

Since the construction placed on the statute in Dixon's Case, supra, it has been brought forward and readopted in all of the subsequent Codes without change, and, under the uniform holding in this state, the readoption of the statute is an adoption of the judicial construction. Huffman v. State, 29 Ala. 40; Anthony v. State, 29 Ala. 27; Ex parte Banks, 28 Ala. 28; 1 Mayf. § 11.

Although penal statutes are to be strictly construed, and cannot be extended by construction, yet they are not to be construed so strictly as to defeat the obvious intention of the Legislature. Crosby v. Hawthorn, 25 Ala. 221; Noles v. State, 24 Ala. 672. And if a literal interpretation would defeat the purpose of the statute, such interpretation will not be adopted, if any other reasonable construction can be given. Thompson v. State, 20 Ala. 54.

If all persons operating drug stores can enlarge their business by extending it to one line of merchandise, they can extend it to another and so on ad infinitum, and such interpretation of the statute would not only defeat its purpose, but would render it unjust and discriminatory in favor of a certain class and against all others.

The agreed case was properly disposed of by the trial court, and the judgment should be affirmed. 1 R. C. L. p. 779, § 6.

BRICKEN, J. (dissenting). I am of the opinion that the application for rehearing should be denied, as I still adhere to the following views expressed in the original opinion:

"For the purposes necessary to a consideration of this appeal, the statute claimed to have been violated is as follows: 'Any person who, being a merchant or shopkeeper, druggists excepted, keeps open store on Sunday,'" etc.

It will be observed that under this statute no specific article of merchandise is either prohibited or permitted to be sold. The statute is directed against all merchants or shopkeepers except druggists, and makes it a violation of the law for them to keep open store on that day. But for the statute against it, any merchant might open up a store or shop on the Sabbath day, and proceed to sell and offer for sale his wares and merchandise. Thus, for good and sufficient reasons, the Legislature has seen fit to prohibit all merchants and shopkeepers, except druggists, from continuing their traffic on the Sabbath day. If it were necessary we might surmise why the Legislature made an exception in favor of druggists, but no surmise is necessary or left open to us. The law requires the court to strictly construe penal statutes, and, where the meaning is plain, the court cannot do otherwise than construe them as they are written. In Jebeles et al. v. State, 131 Ala. 43, 31 South. 377, Mr. Chief Justice McClellan has clearly defined the meaning of keeping open store; what it means and involves. This statute authorizes druggists who keep such articles as are ordinarily kept by well-regulated drug stores to keep open store and under the

agreed statement of facts this defendant cannot be convicted without reading out of the statute something that is clearly expressed therein.

For these reasons, I am of opinion that the rehearing should be denied.