BEFORE THE FIRST DIVISION, MARCH 11, 1963

**No. 67500.**—Border Brokerage Company *v.* United States, protests 295404–K, 301734–K, and 305867–K (Seattle).

OLIVER, Chief Judge: These protests relate to certain merchandise generally identified on the invoices as plastic fertilizer-sample units, which were classified by similitude in use to manufactures of glass, not specially provided for, under paragraph 230(d) of the Tariff Act of 1930, as modified, and paragraph 1559(a), as amended, and assessed with duty at the rate of 25 per centum ad valorem. Plaintiff claims that the merchandise is properly classifiable under the provision

for nonenumerated manufactured articles in paragraph 1558 of the Tariff Act of 1930, as amended, with a dutiable assessment at the rate of 10 per centum ad valorem, or, in the alternative, as stated in counsel's brief, "if dutiable by virtue of the similitude provision of said Para. 1559(a) then dutiable at 50 cents a gross under Para. 217, Tariff Act of 1930, as similar in use to glass vials, jars or bottles, filled or unfilled. All other claims in the protests as originally submitted are abandoned."

At the outset, it should be noted that the collector's classification of the merchandise by similitude "is tantamount to an admission on the part of the defendant that the merchandise is not classifiable directly under any of the dutiable enumerations of the tariff act," *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216, and that the provision for nonenumerated manufactured articles, in said amended paragraph 1558, may be considered only after any of the dutiable enumerations of the tariff act, including the similitude provisions of paragraph 1559, as amended, are found to be inapplicable, *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T.D. 32351; *Oviatt Importing Co.* v. *United States*, 8 Cust. Ct. 276, C.D. 620.

All of the evidence herein was offered by plaintiff. In addition to samples of the present merchandise, two witnesses testified. One was the general plant manager of the foreign exporter, a manufacturer of various plastic items, including displays for advertising. The other was the administrative assistant to the general manager of the fertilizer division of the importer corporation, the exclusive sales agent for "Elephant Brand" fertilizer materials. The combined testimony of the witnesses will support the following summation.

An examination of the samples in evidence discloses that the present merchandise consists of containers made of plastic, concededly polystyrene, holding sample quantities of fertilizer materials. The plastic containers are circular in shape. One of them (plaintiff's exhibit 1) is approximately 1 inch in diameter and one-fourth of an inch in depth, with the identification on the top, "ELEPHANT BRAND—Fertilizer," and holding a sample quantity of a white fertilizer material. The other item under consideration (plaintiff's exhibit 2) consists of a plastic container, about 3½ inches in diameter and one-fourth of an inch in depth, in which are enclosed five small plastic containers, each holding a sample quantity of a different grade or quality of fertilizer material. The containers hold "less than ¼ pint" (plaintiff's exhibit 3), and, at the time of importation, they were filled with the various types of fertilizer materials, as shown in the said exhibits 1 and 2.

The present merchandise is identified herein as "button samples." They are "give-away" items that are sent by the importing corporation to its field representatives for distribution among "both buyers and farmers, to show them the type and quality of the product that we were selling." (R. 28.) The articles in question are designed, and exclusively used, as promotional items to encourage the sale of the importer's fertilizer materials. Before the introduction of plastic containers for such usage, the importer used glass containers (plaintiff's exhibits 4 and 5). Throughout the importer's experience, only glass or plastic was used to make "give-away" containers of fertilizer materials.

Paragraph 217 of the Tariff Act of 1930, invoked herein by plaintiff, reads, so far as pertinent, as follows:

Bottles, vials, jars, ampoules, * * * any of the foregoing, wholly or in chief value of glass, filled or unfilled, not specially provided for, * * * shall be subject to duty as follows: * * * if holding less than one-fourth of one pint, 50 cents per gross: *Provided*, That the terms "bottles," "vials," "jars," "ampoules," * * * as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

To support plaintiff's claim for application of the foregoing provisions of paragraph 217, counsel, in their brief, cite cases which held merchandise to be classifiable thereunder. *Frederick Stearns* v. *United States*, 53 Treas. Dec. 38, T.D. 42542, *De Boer & Livingston (Inc.)* v. *United States*, 58 Treas. Dec. 387, T.D. 44301, and *Will & Baumer Candle Co., Inc.* v. *United States*, 37 CCPA 27, C.A.D. 414.

The *Frederick Stearns* case involved certain small flint-glass dropping bottles that were used to hold "Astringosol," a mouthwash. In the *De Boer & Livingston (Inc.)* case, the merchandise consisted of glass bottles used for holding toilet water. The articles in question in the *Will & Baumer Candle Co., Inc.*, case were empty glass jars used to hold and transport wax candles that had use either ceremonially, or as religious symbols, in churches or chapels. The important feature in all of the cited cases is that, in each of them, the *merchandise* was a glass bottle or a glass jar used to hold, or hold and transport, merchandise. This is not so with respect to the items involved herein. In this case, the imported merchandise is so-called "button samples," each consisting of a plastic container, holding a sample quantity of fertilizer material. The imported entity is the article of commerce.

Appropriate to the present case is *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T.D. 41970, which related to certain glass vials, "specially contrived for the transportation of pharmaceutical and biological preparations," which were used in a medicinal way. Among the Government's claims therein was the allegation that the vials were not suitable for use, nor of the character ordinarily employed, for the holding or transportation of merchandise. In its decision, adverse to the Government's contention, the appellate court stated as follows:

As to the third contention made, that these articles are not suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, the record shows, beyond question, that such containers have been practically universally used to contain and transport a large number of medicinal and biological products running, as the record shows, into millions of packages. The products contained in them are generally bought and sold commercially, and hence they are, within the common meaning of the term, merchandise.

Webster's New International Dictionary, 1925:

Merchandise *n.* 1. The objects of commerce; whatever is usually bought or sold in trade, or market, or by merchants; wares; goods; commodities.

Merchandise is a term including all those things which merchants sell either wholesale or retail, as dry goods, hardware, groceries, drugs, etc. *In re San Gabriel Sav. Co.*, 95 Fed. 271 (273) ; see also *State* v. *Holmes*, 28 La. Ann. 765.

Consistent with the foregoing pronouncements from the *Lilly* case, *supra*, it can be said that the commercial commodity, or the article of commerce— and, thus, the merchandise—in controversy in this case is fertilizer-sample units that include both containers and fertilizer materials, which are distributed by the importer corporation as an advertising medium to enhance the sale of its products. The plastic container is an integral component of the present merchandise, in its condition as imported. It is not the kind of container provided for in paragraph 217, *supra*. Plaintiff's testimony shows that fertilizer materials are neither regularly transported nor ordinarily sold in plastic containers, such as those involved in the present discussion. The statement of the general plant manager of the foreign exporter that plastic containers, like those in the merchandise in question, were used "for holding fishing flies" appears herein as an incidental or a fugitive use, not sufficient to support plaintiff's position. The reasoning employed herein compels the conclusion that the merchandise in question is not classifiable by similitude in use to the glass articles contemplated by the provisions of said paragraph 217, and we so hold.

"The law is well settled that the classification by the collector and his official acts are presumptively correct," *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77, and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification," *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75. It is also a fundamental principle of customs law that when plaintiff challenged the collector's classification of the present merchandise, it assumed the dual burden of showing that the collector was wrong, as well as proving the correctness of its claimed classification. *Yardley & Co., Ltd., et al.* v. *United States*, 41 CCPA 85, C.A.D. 533. On the evidence adduced herein, plaintiff has not sustained its burden. The failure to exclude the present merchandise from the similitude provisions of paragraph 1559, as amended, invoked by the collector, removes from consideration plaintiff's claim for classification under the provision for nonenumerated manufactured articles in paragraph 1558, as modified.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the merchandise in question, that is generally identified on the invoice as plastic fertilizer-sample units, to be properly classifiable by similitude in use to manufactures of glass, not specially provided for, under paragraph 230(d) of the Tariff Act of 1930, as modified, and paragraph 1559(a), as amended, and dutiable at the rate of 25 per centum ad valorem, as assessed by the collector.

The protests are overruled and judgment will be rendered accordingly.