UNITED STATES *v.* LILLY & CO. AND PARKE, DAVIS & CO. (No. 2739)[1]

1. PRESUMPTION FAVORS COLLECTOR.
    The collector's classification involves a finding of all facts necessary to support it. A protestant must claim and show another.

[1] T. D. 41970.

2. AMPOULES—BLOWN GLASS ARTICLES—VIALS.

A container, know as an ampoule, made and sealed by blowing alkali-free glass tubing, to be opened, filled, and resealed in this country, the process having for its purpose the supplying of sterile and undeteriorated hypodermic solutions to physicians, is a "vial," under paragraph 217, Tariff Act of 1922 rather than a blown-glass article, under paragraph 218.

3. CONSTRUCTION—EJUSDEM GENERIS.

The doctrine of *ejusdem generis* can be invoked only when a doubt arises as to whether merchandise not specifically named is to be placed in a class of which some of the individual members are named. Since ampoules are a kind of vial, the doctrine has no bearing on the question of classifying them under paragraph 217, Tariff Act of 1922, which names bottles, vials, jars, demijohns, and carboys.

4. COMMERCIAL DESIGNATION—AMPOULES—VIALS.

Since an ampoule is a kind of a vial, proof that it is commercially known as an ampoule does not prevent its classification as a vial.

5. STARE DECISIS—LEGISLATIVE SANCTION.

Judicial classifications of ampoules as blown-glass articles, where no claim was made that they were vials, are not *stare decisis* as to such claim in this case. Nor can subsequent reenactment be regarded as legislative sanction of any judicial holding that they are not vials.

6. MERCHANDISE—MEDICINE—AMPOULES.

Medicine is merchandise; and ampoules, being vials, are such vials as are "ordinarily employed for the holding or transportation of merchandise," within that language in paragraph 217, Tariff Act of 1922.

## United States Court of Customs Appeals, January 21, 1927

APPEAL from Board of United States General Appraisers, T. D. 41337 G. A. 9090

[Reversed.]

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

*George L. Denny* for appellee, Lilly & Co.

*Horace W. Bigelow* for appellee, Parke, Davis & Co.

*Lamb & Lerch (John G. Lerch* of counsel) *amici curiae.*

[Oral argument October 18, 1926, by Mr. Lawrence, Mr. Denny, Mr. Bigelow, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The articles imported in this case are denominated as ampoules by the importers. The collector classified them as vials holding less than one-fourth of a pint under paragraph 217 of the Tariff Act of 1922, which is as follows:

PAR. 217. Plain green or colored, molded or pressed, and flint, lime, or lead-glass bottles, vials, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof, which shall be dutiable at the rate applicable to their contents),

shall pay duty as follows: If holding more than 1 pint, 1 cent per pound; if holding not more than 1 pint and not less than one-fourth of a pint, 1½ cents per pound; if holding less than one-fourth of a pint, 50 cents per gross: *Provided* That the terms "bottles," "vials," "jars," "demijohns;" and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

They are claimed to be dutiable, by importers, as blown-glass articles, not specially provided for, under the fourth subdivision of paragraph 218 of said act, which is as follows:

PAR. 218.   *   *   *   table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled or whether their contents be dutiable or free, 55 per centum ad valorem;   *   *   *

On appeal from the collector's classification to the Board of General Appraisers, the various protests were sustained and the entries were directed to be reliquidated under said paragraph 218. From that judgment, the Government has appealed.

The issue, as stated by counsel, and as it appears from the record, is narrow, but is vigorously contested. It is substantially, this: Are the glass articles imported to be classified as "plain green or colored, molded or pressed, and flint, or lead-glass bottles, vials, jars, and covered or unfilled demijohns, and carboys   *   *   *   holding less than one-fourth of a pint," as specified in said paragraph 217, or as "articles of every description not specially provided for, composed wholly or in chief value of glass or paste,   *   *   *   blown or partly blown in the mold or otherwise," under said paragraph 218. It is conceded by both parties, that if the goods are classifiable under said paragraph 217, it is under the designation, "vials" therein appearing.

The collector, having classified the goods under said paragraph 217, when the matter came to the attention of the court below, the presumption was that he had found all the necessary facts to exist which brought the goods within that classification, and that his classification was correct. In order to overcome the correctness of the classification, it devolved upon the protestants to demonstrate not only the incorrectness of the classification, but that the goods were properly otherwise classifiable. The protestants, in order to carry the burden assumed, make three contentions, namely: (1) The goods imported are not commonly known as vials; (2) they are commercially known and designated not as vials, but as ampoules; (3) even if it be conceded that they are vials, they are not such articles as are suitable for

use and of the character ordinarily employed for the holding and transportation of merchandise.

To maintain the issues, a large amount of oral testimony and documentary evidence, as well as a large number of collective and illustrative exhibits, were introduced in the court below. It will be necessary to examine the testimony and evidence as to their bearing upon the issues presented.

It appears from the record that the articles imported in this case are glass containers, specially contrived for the transportation of pharmaceutical and biological preparations which are to be used in a medicinal way. These containers are shown to be made of flint glass, and it fairly appears from the record that the glass of which they are prepared is purposely made free from alkali in order that the contents of the containers may not be impaired by chemical reactions. These containers are not pressed or molded, but are made from glass tubing and are of two general types—flat bottomed and round bottomed. In making them the tubing is cut into appropriate lengths and, in the case of the flat-bottomed type, one end is subjected to heat, fused, and then pressed upon an iron plate, thus forming a bottom; the other end is heated, fused, and drawn out into a long, tapering point, and this point is sealed. In the round-bottomed type the bottom is shaped by blowing. The official samples in the importations in question, together with the official samples in T. D. 39848, the record of which was introduced herein and the samples involved in which were admittedly the same as the importations in the case at bar, show the containers to be of various sizes, ranging in capacity from 1 to approximately 50 cubic centimeters.

The record shows that the demands of the medical profession for sterile and uncontaminated containers for certain medicines have led to the adoption by manufacturing chemists of containers such as those imported here and similar types. These are imported sealed; the pointed ends are then broken off, the contents inserted, and these ends again sealed by the use of heat. In this condition the contents are conveyed to the distributors and thence to the medical profession. When desired for use, the small end of the container is removed by breaking or cutting and the contents are removed by a hypodermic syringe or in such other way as is desired. The purport of all the testimony is to the effect that this is the ordinary method used in transporting a great variety of substances useful for the alleviation of human ailments.

Alexander Fisher, manager of the glassware manufacturing department of the appellee Parke, Davis & Co. and a witness for protestants, testified that the imported articles were ampoules. Louis Klein, a witness for protestants and medical consultant for the protestant Parke, Davis & Co., testified that "an ampoule is a special appliance

designed for placing in the hands of the physician a single dose of injectable medicine in such a form as to assure him of its sterility." Walter G. Norvell, superintendent of stock finishing and distribution for the protestant Parke, Davis & Co. and a witness for said protestant, testified that the articles imported were in no way comparable with other bottles, jars, etc., used by protestant in transporting merchandise, and that they are not bottles, jars, demijohns, or carboys of the character ordinarily employed by said protestants for the holding and transportation of merchandise; that a vial is a bottle closed with a cork or diaphragm, while a true ampoule is made from tubing and is hermetically sealed; that a vial is generally used for the transportation of more than one dose and that an ampoule is a "particularly designed container for the preservation of the contents"; that this inclosure for the transportation of liquids was forced upon him by the demands of the medical profession, which demand originated about 16 years before; that such products as are transported in vials, are either stopped with corks or with diaphragms, or protected from deterioration by chemical preservatives.

In the proceedings in No. 964975, incorporated into the record by agreement, John M. Francis, chief chemist of Parke, Davis & Co., testified on behalf of the importer, that his "company put out in these glass containers or ampoules" 46 or 47 different varieties of medicated liquids; that an ampoule is a "container made of glass, predetermined specifically to contain a dose of medicine to convey it from the manufacturer to the consumer, which is subsequently to be destroyed"; that his company uses various types and shapes of ampoules and containers for various products. Aside from some other immaterial testimony, and the samples, this embraces the testimony offered on behalf of the importers in either the case at bar or the incorporated record.

On the part of the Government, an American chemist and manufacturer of glass of eight years' experience, Herman A. Kimble, testified that he was familiar with the merchandise involved here and had manufactured and sold merchandise of that character. The witness then identified many offered exhibits, which are before us. Among these are many small glass containers, designated by him as shell vials, which have been made from glass tubing, some with rounded and some with flat bottoms, and some of which have necks fitted for corks and some of which have no such necks. Among these exhibits was one identified as No. 12, and designated by the witness as a "Rosenow vaccine ampoule." It consisted of a flat-bottomed glass container, about 2 inches long by one-half inch in diameter, fitted with a perforated metal screw top and a rubber diaphragm for hermetical sealing, and has been designated in its trade catalogues for 10 years by the Kimble Glass Co., with whom the witness was

connected, as such. The witness further testified, without objection, that all ampoules are vials, and that, in the trade, an ampoule is a type of vial hermetically sealed, either by heat and fusing or by the use of rubber. The witness then stated that he had been engaged in manufacturing and selling, throughout the United States at wholesale, goods such as those involved here. The following question and answer appear in the record:

Q. I show you the official exhibits of the merchandise involved in these protests and ask you, from your trade experience in selling and manufacturing, whether or not the merchandise represented by the official samples of the merchandise here are included or excluded from the word "vial"?

WITNESS. Absolutely included, sir.

The witness further stated that all vials are made from cold glass tubing, re-treated, and are thus distinguished from bottles, which are made from molten glass blown in a mold or pressed; that an ampoule is a vial, the name ampoule simply describing the shape or usage of the container.

Dr. Eugene R. Whitmore, a professor of bacteriology and pathology in Georgetown University Medical School, testified that he had had charge of the production of all vaccine used by the Army, Navy, and Public Health Service of the United States during the World War; that, during that period, he purchased approximately 1,000,000 glass containers for medicines and vaccines and was familiar with the use of the terms "vials" and "ampoules"; that an ampoule is a vial and that the official exhibits are included within the term "vial"; that, in order to take care of the demand for sterile containers, this type of vial was developed; that some ampoules used by him held 25 c. c., or doses for 50 patients. The following question and answer appear in the record:

Q. What does an ampoule mean? What is the meaning of the word "ampoule"? * * * Practically, what does it mean?—A. Practically, we meant a vial with a constricted neck, so we could seal it readily by fusing the top to avoid wasting the contents, or by putting a rubber stopper in that constricted neck.

He further testified that, in order to avoid waste, other types of ampoules were developed which were sealed with corks.

Pennock M. Way, second vice president of Arthur H. Thomas Co., dealer in laboratory supplies, testified that he had bought and sold glass containers for merchandise throughout the United States in wholesale quantities and stated the following:

Q. Do you know whether or not, Mr. Way, in the trade in the United States, whether the word "vial" has a definite, general, and universal meaning?—A. I would say so; yes.

Q. I show you the official exhibits involved in this protest and ask you, from your commercial experience, whether or not the merchandise in that exhibit

would be included or excluded from the word "vial" as the same is known in the trade?—A. I would most certainly include it.

Then in answer to inquiries by General Appraiser Waite, the following appears:

Q. I would like to ask you a question. Have you bought and sold in wholesale quantities in the United States?—A. Yes, sir.

Q. Bought at wholesale what is called ampoules?—A. Yes.

Q. Vials?—A. Yes.

Q. Is there any difference between the definition, the dictionary definition or the common definition, of the word "vial," known as in the trade, is there any difference between the term "vial" and the dictionary definition of the word "vial"?—A. I believe I could not quote the dictionary term fully, but I can see no reason for there being.

Q. What is a vial, in your estimation?—A. A container of various forms, such as shown here by the exhibits here this morning; that is the way we know them and carry them in stock.

Q. Does this embrace all the different styles of vials?—A. I would not say so; there might be some types of vials that are not here.

Q. All you have to say is that it is a container?—A. It was a container for holding and transporting materials.

Q. That would not cover it entirely, there might be many containers for holding and transporting material, that would not be vials?—A. Of course, there could be; yes.

Q. That would not be quite definition enough; is that the best you can do?—A. It is for transporting in small quantities. You could specify an ampoule is generally something for transporting vaccine or serums, where a vial might almost have anything in it, either dry or liquid.

Q. Does ampoule mean anything more to you than a vial?—A. It is a form of vial. It means a form of vial.

Q. And your definition of a vial is, that it is something to contain and transport material?—A. That would cover an ampoule which is generally used for vaccines and serums.

In addition, it is shown by documentary evidence that certain types of containers have been ordered from the Kimball Glass Co. as "ampoules" and that Exhibit 26 has been ordered as "vials," and that the articles imported here, as well as Exhibit 12 hereinbefore mentioned, are listed by said company in its trade catalogue, as "ampoules."

We have dwelt at considerable length upon this testimony, in order to fully disclose whether the importer has carried the burden imposed upon him. We think this testimony, fairly considered, shows that these articles imported are commonly known to several of the witnesses who testify, as ampoules, but it wholly fails to show that they are not also known as vials. The importers' testimony totally fails to show any commercial designation, while, on the part of the Government, if the testimony offered may be held to show commercial designation, it shows that these imported articles are known in the trade as a type of vials called ampoules, and are in fact, commercially known as vials. Thus it will be seen that the

importers have not, by the evidence, in any way, overcome the presumption raised against them by the adverse classification of the collector.

The words "vial" and "ampoule" are thus defined by the principal lexicographers:

Webster's New International Dictionary, 1925—
Ampul: F. Ampoule; 1. A small bottle; a phial.
Vial: A small vessel for liquids; now, usually a small glass bottle, as for medicines or chemicals; a phial.
Funk & Wagnall's New Standard Dictionary, 1925—
Vial: A small vessel, commonly of glass and cylindrical, narrow uniformly and in proportion to its height, fitted with a mouth to be closed with a stopper, and intended to hold liquids, especially liquid medicines; more widely, any bottle or vessel.
Century Dictionary—
Ampul: Early Mod. e. ampoule; a bottle, flask, vial.
Vial: A vessel or bottle; esp., a small glass bottle used for holding liquids and particularly liquid medicines.
New English Dictionary—
Ampul: Arch. Forms; ampoule: A small bottle or flask; a phial.

From a consideration of these definitions, it appears that an ampoule is a kind of vial. It will be observed that a vial is not defined, alone, as a bottle with a neck fitted for a removable stopper; the definition goes further and includes any small vessel, usually of glass, for the holding of liquids, whether it be in the shape of a bottle or in some other shape, and whether it be fitted for a removable stopper or intended to be closed by some other method. Thus it will be seen that not only is the classification by the collector not in opposition to any proof of commercial designation to be found in this record, but it is also in harmony with the ordinary and common meaning of the language employed in the statute, under which the goods imported have been classified.

As to the third contention made, that these articles are not suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, the record shows, beyond question, that such containers have been practically universally used to contain and transport a large number of medicinal and biological products running, as the record shows, into millions of packages. The products contained in them are generally bought and sold commercially, and hence they are, within the common meaning of the term, merchandise.

Webster's New International Dictionary, 1925:

Merchandise *n.* 1. The objects of commerce; whatever is usually bought or sold in trade, or market, or by merchants; wares; goods; commodities.

Merchandise is a term including all those things which merchants sell either wholesale or retail, as dry goods, hardware, groceries,

drugs, etc. *In re San Gabriel Sav. Co.*, 95 Fed. 271 (273); see also *State* v. *Holmes*, 28 La. Ann. 765.

But it is contended that the articles imported here are not *ejusdem generis* with the class of articles specifically named in said paragraph 217. If these articles are vials, then they are mentioned in the paragraph *eo nomine*, and the doctrine of *ejusdem generis* can have no application. This doctrine can only be invoked whenever a doubt arises as to whether a given article not specifically named is to be placed in a class of which some of the individual subjects are named. *Overton & Co.* v. *United States*, 2 Ct. Cust. Appls. 422; *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181; *United States* v. *Gen. Elec. Co.*, 4 Ct. Cust. Appls. 287; *Burlington Blind Co.* v. *United States*, 1 Ct. Cust. Appls. 374; *United States* v. *Mescall*, 215 U. S. 26.

This brings us to the sole remaining question: Had there been, before the enactment of the Tariff Act of 1922, such a judicial construction of this or similar language in preceding acts as would exclude the articles imported here from the designation "vials," so that the Congress shall be considered as having legislated in view of that judicial construction and as having approved the same? It is argued by appellee and found by the court below, that there had been such a construction; on the other hand, it is as strenuously contended by the Government that no such adjudication had been made.

Two cases cited are particularly urged by appellees as decisive. The first is abstract 26537, 21 Treas. Dec. 220, known as the *Kny-Scherer* case, and decided under the tariff act of July 24, 1897. In that case the contest was between the application of paragraph 99 or paragraph 100 of said act. Said paragraph 99 provided for:

99. Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars. * * *

Paragraph 100 provided for:

100. Glass bottles, decanters, or other vessels or articles of glass * * * and other blown glassware.

The goods imported had been classified as "bottles or vials composed of *molded* or *pressed* glass." The court held they were dutiable as *blown* glassware. It will be seen the issue there was relative to the method of manufacture.

The other case is Abstract 45023, 41 Treas. Dec. 562, the *Bernard, Judae & Co.* case, decided under the act of October 3, 1913. The opinion filed in that case is as follows:

GLASS AMPOULES FOR VACCINE.—Small vials for holding vaccines and serums, termed "ampoules," consisting of clear or white glass without etching or ornamentation of any kind, classified at 45 per cent ad valorem under paragraph 84, tariff act of 1913, are claimed dutiable under paragraph 83, which provides for plain green or colored vials.

Opinion by SULLIVAN, G. A. From an inspection of the samples it was found that these are not plain green or colored vials and are therefore not within paragraph 83 as claimed. Abstract 26537 cited.

Said paragraphs 83 and 84 provided:

83. Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars * * *.

84. Glass bottles, decanters, and all articles of every description composed * * * of glass * * * blown.

It is obvious that the issue here was not whether the articles were vials or not, because it is stated in the opinion they are vials; the disputed point seems to have been as to their color.

Neither of the cases cited, therefore, can be considered as any prior adjudication of the issue involved here, and therefore neither can be held to be a judicial holding which must be taken as assented to by Congress when it enacted the Tariff Act of 1922.

Attention is called by the court below in its opinion filed to the matter of *Parke, Davis & Co.*, T. D. 39848, 44 Treas. Dec. 224. The issue in that case was whether the articles in question were properly classifiable as "biological, chemical * * * articles and utensils," under the first clause of said paragraph 218, or as "articles * * * composed of glass," under the fourth clause thereof. Furthermore, this case can not be said to have had any binding effect upon the Congress, so far as the Tariff Act of 1922 is concerned, as it was decided October 25, 1923.

These are all the adjudged cases which have been called to our attention relevant to this issue. We are unable to gather from them anything to indicate that Congress must have legislated in the Tariff Act of 1922 with the idea in mind that the articles imported here had been judicially determined not to be vials.

It follows that the correctness of the classification made by the collector has been in no way impeached, and the judgment of the court below should be, and is, *reversed*.

DISSENTING OPINION

SMITH and BARBER, Judges: We are sorry that we can not agree with the prevailing opinion in this case.

The merchandise imported is a hollow glass article made of glass tubing cut into appropriate lengths. To make the article one end of each length is fused and either pressed or rounded to form the bottom. The other end is fused and tapered by drawing it to a point where it is so sealed that it can not be used as a container without further processing in this country. Such articles are imported by wholesale drug houses which convert them into containers by breaking off part of the narrow ends thereof. The sterilized interior of the container so made is then filled or partly filled with chemicals, drugs,

medicinal preparations or similar substances and the opening which gave them ingress is again sealed by fusing the glass.

The only question presented by this appeal is whether the article, into which, in its imported condition, nothing can be poured or put, is a bottle, vial, or any of the containers specified in paragraph 217 of the tariff act of 1922. That paragraph is a *bottle* paragraph and provides for filled or unfilled bottles, jars, vials, demijohns, and carboys, made of plain green or colored, molded or pressed glass and for filled or unfilled bottles, vials, jars, demijohns, and carboys made of flint, lime or lead glass.

A bottle is a vessel for holding, carrying, and pouring liquids or other substances and has a neck and *narrow mouth* that can be stopped. A jar is a deep vessel of earthenware or glass more or less cylindrical in shape with no spout and generally with a *wide mouth*. See bottle and jar, New Standard Dictionary, 1925. A demijohn is a large, short necked bottle with a bulging body, usually inclosed in wicker or rush work. See demijohn, Oxford Dictionary. A carboy is a very large demijohn or a globular glass bottle inclosed in a box or in wicker work and designed mainly for the transportation of corrosive acids and the like. See carboy, Oxford Dictionary and New Standard Dictionary, 1925. A vial is a small narrow cylindrical vessel commonly composed of glass and fitted with *a mouth* to be stopped *with a stopper* and has for its purpose the holding of liquids, especially medicines. See vial, New Standard Dictionary, 1925. A vial is a vessel or bottle, especially a *small* glass bottle for holding liquids and particularly liquid medicines. See vial, Century Dictionary and Encyclopedia.

Every one of the articles named in paragraph 217 must have a mouth of some kind by means of which liquids or other substances may be inserted and it is clear from the definitions cited that the scope of the provision is limited to certain classes of glass containers which are either filled or which *at the time of importation are*, without further processing, capable of being filled. The merchandise imported, in the condition in which it was imported, can not be considered as a container of any kind and by no stretch of the imagination can it be regarded as a bottle or as a vial which, according to all the definitions and the common meaning of the word, is a small bottle.

Ampoules are not provided for in paragraph 217 and if they be an article which is not a bottle, jar, demijohn, carboy, or vial, they are not subject to the duty imposed by that paragraph. If ampoules be another name for vials, then the articles imported are not ampoules or vials inasmuch as they were at the time of their importation utterly incapable of functioning as containers and incapable of receiving liquids or any other substance whatever.

The word "ampoule" is not defined in any of the English dictionaries, except in Webster's New International Dictionary, 1925, which defines it as follows:

Ampoule (ampool; F. anpool), n.   (See Ampul.)   A small glass capsule for containing a hypodermic solution, usually one dose.

It is apparent from the English definitions of the words "ampulla" and "ampul" that ampoule is derived from the Latin word "*ampulla,*" which meant a small bottle or vessel with a slender neck and a *flattened mouth* used for holding perfumes for the toilet and oils for anointing the body after bathing or athletic exercises.   In the Middle Ages the term "*ampullæ*" was applied to small glass or lead flasks or bottles carried as containers by pilgrims or travelers.   In the church, *ampullæ* were flasks for holding the consecrated oil used in confirmtion, ordination, and extreme unction.   See ampulla, New Standard Dictionary, 1925, and Webster's New International Dictionary, 1925. Ampul, another derivative of *ampulla,* is defined by the Oxford Dictionary, the Century Dictionary and Encyclopedia, and Webster's New International Dictionary as the obsolete designation for a *small bottle,* flask, or *vial.*

Every definition of ampulla and of its derivative ampul clearly and unmistakably contemplates a container having a mouth and into or from which something may be poured.   None of the definitions indicate that an ampul, ampulla, or ampoule means a vessel which has been permanently sealed and therefore incapable, without injury to itself, of receiving liquids or other matter or of discharging therefrom that which may have been received prior to the sealing thereof.

Hydrochlorate of quinine imported under the tariff act of 1909, in sealed glass tubes designated as ampoules, was assessed for duty under paragraph 65 of said act as chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, or similar forms and intended for medicinal purposes.   The importer protested that the hydrochlorate of quinine was a salt of cinchona bark and was, therefore, free of duty *with its container* under paragraph 658 of the free list of the act of 1909.   The Board of General Appraisers held that the ampoules in which the merchandise was imported were the usual containers for that class of goods and that they were free of duty as claimed by the importer.   Protest of *Vandegrift & Co.,* T. D. 31830, dated August 17, 1911.

Apparently to meet the decision in the *Vandegrift* case, Congress provided in paragraph 17 of the tariff act of 1913 for chemicals, drugs, medicinal and similar substances in ampoules and thereby amended paragraph 65 of the tariff act of 1909, which contained no provision for such preparations in ampoules.   In consequence of that

amendment the Board of General Appraisers on June 17, 1915, held that vaccine virus *in ampoules* was not entitled to free entry as vaccine virus under paragraph 400 of the act of 1913.    See protest of the *American Express Co.;* Abstract 37925.

In September, 1911, the Board of General Appraisers adjudged that small vials of glass known as "ampulla," which, *after importation were sterilized,* filled and then sealed by fusing the mouth of the vial, and which were used as containers for hypodermic fluids, were not dutiable as bottles or vials *composed of molded or pressed glass under paragraph 99 of the act of 1897,* but were blown glassware under paragraph 100.    Protest of *Kny-Scherer Co.,* dated September 11 1911, Abstract 26537, 21 Treas. Dec. 220.

In June, 1922, prior to the passage of the act of 1922, the board decided that ampoules consisting of clear, white glass without etching or ornamentation of any kind were not dutiable under paragraph 83 of the act of 1913 as vials of *plain green or colored, molded or pressed, glass* or vials of *flint, lime, or lead glass.*    Protest of *Bernard, Judae Co.,* T. D. 45023.

The decisions just cited establish beyond debate that the word "ampoule" was known to the Board of General Appraisers and presumptively to Congress as early as August, 1911.    In fact, Congress was so well acquainted with that word that in paragraph 17 of the act of 1913 it expressly provided for "chemicals, drugs, medicinal and similar substances   *   *   *   in ampoules."    From the fact that chemicals and medicinal preparations placed abroad in ampoules were known to Congress as chemicals and medicinal preparations in ampoules and from the fact that such chemicals and medicinal preparations were provided for in paragraph 17 of the tariff act of 1913, it can not be logically concluded at all that Congress regarded as bottles or vials empty ampoules sealed with fused glass and incapable of receiving merchandise for transportation, a characteristic requirement of paragraph 97 of the act of 1909, of paragraph 83 of the act of 1913, and of paragraph 217 of the act of 1922, which, with changes as to the duty to be imposed, substantially reenacts said paragraphs 97 and 83.

Congress knew the common ordinary meaning of the words "bottle" and "vial" and if it wished to include in paragraph 217 of the Tariff Act of 1922 empty ampoules sealed in such a way that they could not be used as containers, it would have expressly provided for them therein.

It is barely possible that there are two classes of ampoules, one of which is not available for use as a container until its condition has been modified by giving it a mouth and the other ready for use as a container because it has a mouth and is capable of receiving liquids

and other substances of appropriate size.   If there be two classes of ampoules, the definition of vial makes it clear that the sealed ampoule is not a vial.   The sealed ampoule might be regarded as a partly manufactured vial, but it certainly could not become a vial until it was further processed.

An attempt was made to show that ampoules were known to the trade as vials, but the evidence in that behalf was insufficient to justify the conclusion that empty ampoules which have been sealed with fused glass so as to preclude the entrance therein of any substances whatever are known to the commerce of this country as vials.   Indeed, the principal witness, who testified on that subject, frankly stated that he had no reason to believe that the meaning of vial in the trade differed from the dictionary definition of the term.   The merchandise in its condition as imported is not a container, bottle, or vial, and is incapable of receiving and can not be used as a container for the holding or transportation of merchandise until it has been further processed in this country.

We are of the opinion that the judgment of the Board of General Appraisers should be affirmed.