The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* THE FRIEDLAENDER Co. (No. 3594)[1]

---

[1] T. D. 46445.

United States Court of Customs and Patent Appeals, May 1, 1933

*Charles D. Lawrence,* Assistant Attorney General (*Daniel P. McDonald,* special attorney, of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument February 10, 1933, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

From the brief in behalf of the Government we quote the following description of the merchandise which is involved in this appeal by the Government from a judgment, T. D. 45814, of the United States Customs Court sustaining the protest of appellee against the collector's classification.

### DESCRIPTION OF MERCHANDISE

Exhibit 1 consists of an ordinary china dinner plate, mounted on a framework composed of base metal, holding the plate a few inches above the table, and has à handle composed of metal coming up on either side of the plate for the purpose of lifting the article.

Exhibits 2, 7, and illustrative Exhibit A consist of vases.

Exhibits 3, 5, and 10 are small earthenware receptacles about four inches in diameter, mounted upon little short legs about one inch high and have around the rim thereof a metal ring.

Exhibit 4 and illustrative Exhibits B and D are boxes five to six inches in diameter, highly decorated with metal filigree work around the edges and have hinged covers and in addition otherwise decorated with what is apparently hand painting.

Exhibits 8, 9, and illustrative Exhibit E are alabaster boxes with removable lids, about five to six inches in diameter, ornamented with gold-plated filigree work at top and bottom.

Exhibit 6 is a large shallow glass bowl about twelve inches in diameter with a metal ring running around the edge thereof, upon which ring, on opposite sides, there are projections constituting handles.

Illustrative Exhibit C is a glass-bottomed serving tray with a beautiful design made with roosters' feathers showing through the glass.

Certain of the merchandise was imported under the Tariff Act of 1922 and the other under the Tariff Act of 1930. That imported under the former act was classified by the collector under paragraph 399 thereof which reads as follows:

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

It was claimed by the importer to be properly classifiable under paragraph 339 of said act which reads:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed of iron or steel and enameled or glazed with vitreous glasses, 5 cents per pound and 30 per centum ad valorem; composed wholly or in chief value of aluminum, 11 cents per pound and 55 per centum ad valorem; composed wholly or in chief value of copper, brass, steel, or other base metal, not specially provided for, 40 per centum ad valorem; and in addition thereto, upon any of the foregoing articles containing electrical heating elements as constituent parts thereof, 10 per centum ad valorem.

The portion imported under the Tariff Act of 1930 was classified by the collector under paragraph 397 of that act, reading:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The importer claims it to be dutiable under paragraph 339 of said act, reading:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: Plated with platinum or gold, 65 per centum ad valorem; plated with silver, 50 per centum ad valorem; composed of iron or steel and enameled or glazed with vitreous glasses, 5 cents per pound and 30 per centum ad valorem; composed wholly or in chief value of aluminum, 8½ cents per pound and 40 per centum ad valorem; composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

There was much testimony taken in the case, three witnesses being called by the importer and four by the Government, all of whom were examined at some length. The court below in an opinion by Judge Kincheloe made specific findings of fact, saying:

In our opinion the weight of the evidence clearly preponderates in establishing the following facts, and we so find:

1. That the centerpieces represented by Exhibit 1 are used in the dining room or living room of the home for serving cakes, crackers, fruit, sandwiches, etc. So testified three witnesses for plaintiff and three of the four who appeared for defendant.

2. That the bronze and earthenware vases represented by Exhibits 2 and 7 and the vase of wrought iron and glass covered by illustrative Exhibit A are chiefly used in the home for holding flowers. It is not material that one of the witnesses for defendant confined their use to artificial flowers, especially since all three of plaintiff's witnesses and one for defendant insisted the vases were for natural flowers.

3. That the bronze and porcelain trays represented by Exhibits 3, 5, and 10 are used in dining and living rooms of homes for serving almonds, mints, etc. We deem of questionable probative value the testimony that these articles could likewise be used as ash trays, especially since cross-examination revealed certain discrepancies in the minds of the witnesses so testifying as to the alleged similarity to the present trays of articles which they had seen used for holding ashes. Also, testimony that the present trays lack the "cigarette rests" invariably found on ash trays is persuasive that these trays were not designed for holding ashes and that they are not so used.

4. That the bronze and porcelain boxes represented by illustrative Exhibit D are used in the home as candy containers. While there was some disagreement among defendant's witnesses concerning the use of this exhibit, one of such witnesses admitted that "a box is always useful," which, of course, seems logical. At any rate, we believe that the testimony as a whole fairly shows that these boxes are primarily useful articles, not mere ornaments. The statement of one witness that they are for holding jewelry lacks force in view of testimony that the conventional jewelry cask is invariably lined.

5. That the bronze and crystal centerpiece represented by Exhibit 6 is used on the table or buffet for holding fruit. This is not disputed.

6. That the alabaster and metal boxes represented by Exhibits 8 and 9 and by illustrative Exhibits B and E are used in the home as candy containers. One witness said they were merely ornaments, but that statement was largely opinion testimony rather than the result of observation of use. The expressed view that the alabaster would dissolve and disintegrate if wiped occasionally with a damp cloth is denied in testimony submitted by witnesses who have actually used such method of cleaning these boxes for years without any such disastrous results. One of defendant's witnesses corroborated the testimony of all three who appeared for plaintiff that the boxes are candy containers, and we are satisfied that such is the fact. That finding is not overcome by the effort made to show that the articles are powder-puff boxes. Conceivably many types of boxes might well contain the powder puff admitted in evidence herein without proving such boxes to be powder containers.

7. That the bronze and glass feather trays represented by illustrative Exhibit C are used to carry glasses from one place to another in the home. Such is the testimony of all three of plaintiff's witnesses and of two of those who appeared for the defendant.

It was then held that, under the facts as found, the case was controlled by the decision of this court in *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297, and that of the United States Customs Court in *Friedlaender Co.* v. *United States*, T. D. 44796, 59 Treas. Dec. 860, "wherein paragraph 339 of the act of 1922 has been judicially construed as one predicated solely upon use."

The brief of appellee in the case argues, in the first instance, that appellant, in its brief, "has presented no questions properly cognizable by this court and that, therefore, the appeal should be dismissed." No formal motion to dismiss was made, however, and no

question of jurisdiction is raised. Even if it were conceded that the Government merely asks this court to reverse the lower court upon findings of fact without insisting upon errors of law, that would not present a case for summary dismissal. Since it is a protest case it may be considered by us upon questions of fact as well as upon questions of law, such consideration to be under the usual and well-known rules applicable when an appellate court is reviewing an appealed decision. However, errors of law as well as of fact are assigned.

The record discloses that Judge Kincheloe, who prepared the opinion of the court below, was present throughout the trial of the case, heard all the testimony, saw all the witnesses, and himself occasionally asked pertinent questions. While the opinion does not review in detail the elaborate testimony, nor quote the specific evidence which led to the conclusions reached, our own examination of the record satisfies us that the findings of fact are not against the weight of the evidence. The Government brief, while stating that "the evidence in this case is to a large extent conflicting," and while it gives a résumé of the testimony claimed to conflict, does not convince us that the court's findings are against the weight of the evidence, if the witnesses are to be credited, and it does not suggest that they should be discredited or give any convincing reasons why those testifying in support of the findings are inferior in qualification, opportunity for knowing the facts, or otherwise to those whose testimony differs therefrom.

No question of commercial designation is involved and the material parts of the testimony are those which are directed to the uses of the articles.

The Government's argument is based principally upon the assertions that (point 1) "the inherent nature of the articles definitely excludes them from classification under paragraph 339," and that (point 11) "the court below erred in holding appellee had sustained the burden of proof."

The tenth assignment of error is to the effect that the trial court erred—

in finding and holding contrary to the law applicable thereto, the evidence, the weight of evidence, and the intent of Congress, and the inherent nature of the exhibits that all such exhibits are used or are chiefly used as table or household utensils.

This is obviously an assignment of mingled fact and law. We deem it sufficient to say that, since the Government has failed to point out findings as to use which are against the weight of the testimony and since our own research in the record discloses none that we so regard, the factual portion of the assignment must be overruled. We do not feel that in this case "the inherent nature of the articles" outweighs the positive testimony of the witnesses as to chief use. Since classifi-

108

cation under the paragraph, as held in the *Ellis Silver Co.* case, *supra*, and as stated by the court below, is predicated upon use, obviously testimony as to use is both proper and necessary, and the "inherent nature of the articles" here involved does not overcome the force of such testimony.

As to the legal parts of the assignments of error, they,.too, fall with the sustaining of the findings of fact.

It is deemed proper, however, to say that there is an expression in the opinion of the court below which is capable of a construction with which we should be unable to agree.

The court says: ·

\* \* \* it necessarily follows that the single determinative fact which must govern the classification of these articles is the chief use made thereof in the dining room or in the household. Are they. used therein chiefly as articles of utility, or are they primarily constructed and designed and chiefly employed as purely ornamental objects which serve little or no utilitarian purpose, *but are intended merely to decorate and embellish the home?*

The implication of the emphasized phrase is too broad. Utilitarian use is not the only criterion. There may be cases in which the ornamental use outweighs the utilitarian use, even though the utilitarian use be a substantial one, and had the testimony in this case shown that ornamental use was the chief use, a different conclusion would be necessary.

We think the fair construction of the opinion of the court below is that it found, from the weight of the evidence, that the involved articles were *designed* for use as household utensils, and that such is their *chief* use.

Upon the facts, as found, we hold the conclusion of the court below to be without error and its judgment is *affirmed.*

DISSENTING OPINION

Bland and Lenroot, Judges: We can not concur in the decision of the majority except as to the merchandise represented by Exhibits 1, 3, 5, 6, and 10. As to the merchandise represented by the other exhibits we think, under the record, the classifications by the collector should have been sustained, and the judgment of the United States Customs Court as to them should have been reversed.

The household or kitchen utensil paragraph was clearly intended to cover articles, which, as was said in *United States* v. *Ellis Silver Co.,* 16 Ct. Cust. Appls. 570, T. D. 43297, were "designed and chiefly used for utilitarian purposes—utensils." We further said there that only such articles as are in the form, generally, of vessels, and are of the character of utensils, designed and used chiefly for utilitarian purposes, are included within the provisions for hollow ware.

In the instant case, the opinion of the majority rests on the weight of the evidence being with the special findings of facts by the court

below. The first finding of fact refers to centerpieces represented by Exhibit 1, and the finding says that they "are used in the dining room or living room of the home for serving cakes, crackers, fruit, sandwiches, etc." There is no finding that they are so chiefly used.

In the second finding, the bronze and earthenware vases represented by Exhibits 2 and 7, and the vase of wrought iron and glass represented by illustrative Exhibit A, are said to be *chiefly used* in the home for holding flowers, artificial or natural.

The third finding is that bronze and porcelain trays, represented by Exhibits 3, 5, and 10, are "used in dining and living rooms of homes for serving almonds, mints, etc." No chief use found.

The fourth finding is that bronze and porcelain boxes represented by illustrative Exhibit D "are used in the home as candy containers." No chief use found.

The fifth finding is that the bronze and crystal centerpiece represented by Exhibit 6 "is used on the table or buffet for holding fruit." No chief use found.

The sixth finding is that metal and alabaster boxes, represented by Exhibits 8 and 9 and by illustrative Exhibits B and E, "are used in the home as candy containers." No chief use found.

The seventh finding is that bronze and glass feather trays represented by illustrative Exhibit C are used to carry glasses from one place to another in the home. No chief use found.

It is difficult to understand how the court's findings 1, 3, 4, 5, 6, and 7 could possibly require that the articles mentioned in those findings should be classified by chief use when no such finding is made. Moreover, the findings do not in any instance touch the question as to what the articles were designed for.

Our objection to the opinion of the majority, however, goes further than is above indicated. In finding 2, the finding of the court below was that the vases were chiefly used in the home for holding flowers. An article may be used in the home all the time for holding flowers and yet it may be said that it is not designed and chiefly used for that purpose because it may be designed and chiefly used for its ornamental effect.

It is a well-established rule that the classification of an article by the collector carries with it the presumption that he found all the necessary facts to exist which brought the goods within that classification, and the burden is upon the protestant to overcome such presumption. *United States* v. *Lilly & Co.*, and *Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970. The presumption from the collector's classification in this case therefore follows that in finding that the articles here involved were not dutiable under the provisions of paragraph 339, he found that they were not designed or chiefly used as household utensils. The articles themselves, except those

represented by Exhibits 1, 3, 5, 6, and 10; lend support to the conclusion that they are designed to be used chiefly for the purpose of ornamentation. In the instance at bar, every article involved, except those represented by the above referred to exhibits, is expensive and very highly ornamental. It is clear that the ornamental vases, when flowers are put in them, become more ornamental and their flower use only accentuates the ornamental character of the importation.

It is, to our minds, wholly incongruous to classify the highly ornamented articles above referred to, some of which are in part of alabaster and filigree work, as household utensils along with washtubs, coal buckets, and the like. The Luneville vases in this case possess artistic merit to such a degree that they should not be regarded as mere ornamented flowerpots which might be properly regarded as household utensils. Some of the most beautiful and expensive pieces of art are incidentally utilitarian and would not be in a home unless continuously used for some slight utilitarian purpose, and yet they are designed to be used and are chiefly used for an ornamental or artistic purpose.

Of course, there are household, kitchen, and hospital utensils which are ornamental, and if such ornamentation is an incident rather than the controlling factor in their use, they are still utensils. Each importation should be considered without respect to any hard and fast general rule that can be laid down.

It is our opinion that in this case it was incumbent upon the importer to prove a state of facts from which it could be determined that the articles were not designed and used chiefly for ornamental purposes. As to the above referred to highly ornamental articles, the proof in the case does not overcome the presumption of correctness of the classifications of the collector.