(C. D. 1140)

IMPERIAL GEM SYNDICATE *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 1, 1948)

*Wallace & Schwartz; Barnes Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Harold L. Grossman,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of Chicago, in which the plaintiff seeks to recover a portion of the duty assessed on certain articles composed in chief value of silver, invoiced as "Polkas," which were classified by the collector as smokers' articles and assessed with duty at the rate of 60 per centum ad valorem under paragraph 1552 of the Tariff Act of 1930. Various claims are set forth in the protest and amended protest, but at the trial plaintiff relied upon paragraph 397, as modified by the Mexican Trade Agreement, T. D. 50797, assessing duty at 32½ per centum on

"Articles or wares not specially provided for, if composed wholly or in chief value of silver."

A hearing was held in Chicago and the case submitted there. At that time a sample of the merchandise was admitted in evidence as plaintiff's exhibit 1. It consists of two parts: A round sterling silver tray, 3¼ inches in diameter and ⅝ of an inch deep, and a flat wooden container in the shape of a camel. The wooden piece has a hole in the center the size of the tray into which the tray fits, being held in place by an overlapping lip.

The plaintiff called Frank A. Donars, the examiner who examined the merchandise. He testified that he made an advisory classification of the merchandise as smokers' articles; that he had no knowledge at the time as to how the articles were used since this was the first importation of them that he had seen; that his opinion was based on previous importations of smokers' articles, including ash trays, and on treasury decisions and bureau letters; and that he later received a confirmation of his opinion from the Customs Information Exchange.

Defendant called Joe Goldstone, a partner of the importing firm, who testified that he sold some of the articles during October and November 1943 and on June 26, 1944, and that they were invoiced by his firm as ash trays, but that in his opinion they were not correctly invoiced as they were not suited for use as ash trays because they had no grooves in which to rest cigarettes and because the wooden part would burn if a lighted cigarette were left on it. He admitted, however, that the silver part could be used as an ash tray or a coaster. He testified further that he had worked with the designer in Mexico and that the articles were designed as coasters.

After the case was submitted, the court upon its own motion issued an order, dated June 7, 1946, stating in part:

Since neither side has introduced any evidence as to the actual use of the article, in order that the ends of justice may be served,

IT IS HEREBY ORDERED that the case be restored to the calendar for further evidence.

Thereafter the case was restored to the calendar and a hearing held in New York. The plaintiff did not introduce any further evidence but the Government produced Peter H. Cannon, an employee of the Associated Merchandise Corp. He testified that his concern is engaged in market research and the purchasing of merchandise for 23 large department stores throughout the United States; that he is a market representative for fine jewelry, smokers' articles, and silverware; that he has been handling smokers' articles since 1924; that he buys smokers' articles for the 23 outlets amounting to about 200 to 300 thousand dollars a year; that in order to orient himself, he contacts

manufacturers and importers, visits sales outlets, and studies selling conditions. He was shown plaintiff's exhibit 1 and stated that it was suitable for use and was used as an ash tray; and that based upon his experience, knowledge, and observation, he believed that such an article was recognized and accepted as a smoker's article at or about June 17, 1930. He stated that the article was suitable for use as an ash tray in spite of the absence of a groove; that many ash trays do not have grooves to hold lighted or smouldering cigarettes; and that his opinion was not changed because of the decorative wooden figure in the shape of a camel surrounding the silver receptacle.

On cross-examination, Mr. Cannon testified that he had never seen an article identical with plaintiff's exhibit 1 used, but that he had seen articles consisting of a glass insert set in a wooden frame, without any grooves, for holding cigarettes used as ash trays; that in some instances a lighted cigarette left in the tray will char the sides. He stated that his department handles silver coasters; that they generally have a rough spot in the form of a star on the bottom of the well to prevent the glass from sticking to the tray; that such rough spot is not necessary but that he tries to insist on it; that any coaster can be used as an ash tray.

In answer to questions by the court, the witness stated that he would not buy the article in question because he did not like the design and did not think it would sell; that the difference between an ash tray and a coaster is that the latter usually has a star set in the bottom; that he has bought and sold ash trays with wooden frames; that in his opinion the article herein is more like an ash tray than it is a coaster; that he did not think the shape of the wooden frame indicated the use in any way.

Plaintiff claims that the article is a coaster and not an ash tray because of the absence of grooves and because the wooden frame would char if a lighted cigarette were placed thereon. The Government claims that plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification and that the evidence shows that the article is an ash tray.

The collector's classification of the merchandise as smokers' articles, which was based upon the appraiser's and the examiner's advisory classification (see Report of Collector on Protest), is presumptively correct and the burden is upon plaintiff to overcome the presumption. *United States* v. *Bullocks, Inc.*, 24 C. C. P. A. 41, T. D. 48330; *United States* v. *Bullocks, Inc.*, 25 C. C. P. A. 381, T. D. 49465. In *V. E. Scott & Co.* v. *United States*, 14 Cust. Ct. 1, C. D. 902, we stated the rule as follows (p. 4):

The collector having classified the merchandise as smokers' articles, it is presumed that he found all the necessary facts to exist which brought the goods

within that classification. In order to overcome the correctness of the classification, the plaintiff must show the incorrectness of the classification and that the merchandise is otherwise classifiable. *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

Plaintiff contends that the presumption of correctness has been overcome by the fact that the examiner advisorily classified the merchandise as smokers' articles without knowing its chief use. Whether or not an article falls within the provisions of paragraph 1552 depends upon the chief use thereof. *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231. The examiner testified that his classification was—

* * * based on previous importations of smokers' articles, including ash trays, also Treasury decisions and Bureau letters. After I had formed my opinion I made a report to the Customs Information Exchange, and I have received a reply confirming my opinion as to the article being dutiable under Paragraph 1552, 60 per cent.

A somewhat similar situation arose in *United States* v. *Bosca Reed MacKinnon Co.*, 21 C. C. P. A. 358, T. D. 46888. In that case it appeared that an advisory classification made by one E. C. Henderson, who acted as deputy collector and appraiser, was followed by the collector. Mr. Henderson testified that he did not make any personal investigation to determine the chief use of the imported leather and that he did not have any knowledge as an expert or in his official capacity as to chief use, other than as reported by the Customs Information Exchange. The court held that this circumstance was not enough in itself to affect the applicability of the rule that the collector's classification is presumptively correct, stating (p. 361):

As a matter of law, we regard the rule applicable in the instant case. The existence of the rule and the necessity therefor are matters so well-known and understood that comment and citation of authorities are deemed unnecessary. Legally, the acts of classification and assessment in this case were the acts of the Collector of Customs at Cleveland. The statute makes them such, and the testimony of Mr. Henderson, acting deputy collector and appraiser, that he made no personal investigation as to use and had no personal knowledge as an expert, or in his official capacity, concerning chief use may not be held to affect the applicability of the rule itself which exists as a rule of law. At most, his testimony upon this point can only be considered along with other evidence in the case, in determining whether the presumption has been overcome; it may not be held to avoid or nullify the applicability of the rule itself.

In analogous situations in reappraisement cases, it has been held that the fact that the examiner did not affirmatively state that certain items were considered by him, did not constitute any substantial evidence that the appraiser did not consider them, and that the appraised value carried with it a statutory presumption of correctness which could not be disturbed by the testimony of the examiner.

*United States* v. *Eurasia Import Co., Inc.*, 33 C. C. P. A. 123, C. A. D. 326; *Florea & Co., Inc.* v. *United States*, 21 Cust. Ct. 280, Reap. Dec. 7612. So here, the fact that the *examiner* did not know the chief use of the article does not constitute evidence that the *collector* did not, and the presumption of correctness which attaches to the *collector's* action cannot be disturbed by the *examiner's* testimony.

Since the presumption has not been overcome by the examiner's testimony, plaintiff can prevail only if it has established that the merchandise was not chiefly used as smokers' articles. In spite of the fact that this case was restored to the calendar for proof of use, the record as a whole contains little evidence of *actual* use and none as to *chief* use. Mr. Goldstone testified that his firm had invoiced the articles as ash trays on four different occasions, but that they were designed as coasters and he did not think they were suitable for use as ash trays because of the absence of grooves and because the wooden part might burn. Mr. Cannon testified, on the other hand, that many ash trays without grooves for cigarettes are sold and that he had seen ash trays with wooden frames. He added that coasters generally have a rough spot on the bottom of the well to prevent the glass from sticking to the tray. However, he had never seen the identical article in use and apparently he had seen ash trays with wooden frames in use only during demonstration tests.

An examination of the article does not disclose its chief use. We do not think the absence of cigarette grooves is sufficient in itself to indicate that the article was not chiefly used by smokers. While it was held in *United States* v. *The Friedlaender Co.*, 21 C. C. P. A. 103, T. D. 46445, and *Ignaz Strauss & Co., Inc.* v. *United States*, 9 Cust. Ct. 342, C. D. 710, that trays without cigarette grooves were not ash trays, in both those cases there was testimony that the articles were chiefly used for household and ornamental purposes. The fact that the articles herein were partly made of wood does not negative their use as ash trays, since the cigarette would normally rest on the wooden part with the lighted end over the silver tray. Moreover, the articles are not particularly suitable for use as coasters because they do not have a rough spot on the bottom of the well to prevent the glass from sticking and because the wooden part takes up considerable space on the table and the silver part is larger than the ordinary tumbler.

We hold, therefore, that the plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification. The protest is overruled and judgment will be rendered accordingly.