BEFORE THE SECOND DIVISION, MAY 22, 1951

**No. 55564.**—The A. W. Fenton Co., Inc. *v.* United States, protest 148841–K (Cleveland).

LAWRENCE, Judge:   An importation described on the consular invoice as "1 R. 30 Rotaprint printing press" was classified by the collector of customs as printing machinery, as described in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), and duty was assessed thereon at the rate of 25 per centum ad valorem.

Plaintiff contends that the article should be classified as a duplicating machine within the purview of paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, effective January 1, 1948, and subject to duty at the rate of 15 per centum ad valorem.

At the trial, H. K. Baumgardner of the importing firm, and the only witness, was called on behalf of the plaintiff.   He identified illustrative exhibit A as a picture of the machine in question and testified, in substance, that he had sold this type of machine for 23 years; that he was familiar with its operation; that it uses the offset principle and is a three-cylinder machine; that a plate is on one cylinder and the ink from the plate is deposited from the rubber blanket which

is on the second cylinder. The rubber blanket impresses the ink on the paper, which is separated by a third cylinder referred to as the "impression cylinder," and the paper goes between the rubber blanket and the impression cylinder. He further testified that ink is applied to a specially prepared metal or paper plate attached to the upper roller; that the ink is transferred to the rubber blanket attached to the second cylinder, and the paper goes over the rubber blanket; that the machine uses no type whatsoever and printing is not done directly from the metal plate to the paper, but always through the intervention of the rubber blanket.

On cross-examination, Mr. Baumgardner described offset printing as follows:

It is printing that is done by the offset method, which term is derived from the fact that your image offsets or transfers from your plate to your rubber blanket and then to your paper as contrasted with direct printing or duplicating where you impress the ink directly from the plate to the paper.

X Q. That is what this machine does?—A. That's right.

X Q. This is known as it is described, a Rotaprint, isn't it?—A. That's right.

Plaintiff has not filed a brief on the subject, and we are not informed upon what basis it seeks to establish that a so-called Rotaprint printing press falls within the description of paragraph 372, as modified, *supra*, which reads:

\* \* \* Duplicating machines (not including printing presses).

The United States (defendant) invites our attention to the case of *Reiners Rotoprint, Inc.* v. *United States*, 64 Treas. Dec. 1107, Abstract 26170, in support of the proposition that a rotoprint press is a printing machine.

It appears from the opinion of the court that the merchandise in that case consisted of metal sheets which were used in conjunction with an offset press known as a rotoprint machine.

The court held that since the metal sheets there in controversy were indispensable and essential parts of rotoprint machines, they were properly classifiable as parts of printing machinery. That case, however, throws very little, if any, light on the present controversy.

In determining whether or not the imported mechanism is a duplicating machine, we are aided by the following references:

Encyclopaedia Britannica (1947), volume 16:

**OFFICE APPLIANCES.** \* \* \*

\*     \*     \*     \*     \*     \*     \*

**Duplicating Machines.**—In offices there is much need for devices that will quickly produce multiple copies of typewriting or handwriting, for the time and labour thus saved is an important economy. Sometimes only a few copies are needed, sometimes many. For a limited number of copies, say up to five or six, the carbon method of duplication is perhaps the cheapest in most cases; but where from 5 to 100 copies are required, the hektograph process is preferable.

**Stencils.**—For a still larger number of copies, the stencil methods and type methods are available. With the former, the stencil was originally made on a sheet of wax-covered paper, which was written upon either with a stylus or with a typewriter from which the ribbon was removed—a system that had many defects. The modern method utilizes a specially prepared sheet of tough, flexible tissue, which can be filed away after using and used many times. \* \* \* Typewriting, handwriting and drawing may all be combined on one stencil sheet. The duplicator consists of a hollow revolving cylinder, partially covered by an ink pad, over which the stencil is fastened. Each revolution brings the stencil sheet in contact with the paper, and the ink, passing through the character or design, makes the impression. From 1,500 to 5,000 copies can be made in an hour, depending on whether the model is hand- or motor-operated and whether it is automatically fed.

**Hektographs.**—The hektograph is many years old, and its operation is based on the principle of absorption. The original writing is done on a sheet of hard bond

paper with a water-soluble ink or with a typewriter ribbon impregnated with such ink. This sheet is then placed in contact with a moist surface of gelatin or clay composition, and the writing is absorbed from the paper and appears in reversed form on the gelatin or clay surface. Then, by placing a sheet of blank dry paper on this moist surface, the impression is transferred to the paper. * * * The modern hektograph uses the old principle, but the gelatin is coated on a long band, a small portion of which is exposed at a time. This band runs over a flat iron surface. Registration is accomplished by a special feeding device. The unique feature of the hektograph duplicator is its use in routines of order or billing systems, in which from 10 to 15 copies of the same writing (or any portion of it) may be transferred to sheets of various sizes and shapes. Such copies are much clearer than carbons, and the paper does not have to be thin. The hektograph can also be used for bulletins of which 100 or less copies are desired.

Webster's New International Dictionary (1948):

**duplicator** * * * A copying machine, as a device for duplicating typewriting * * *.

Funk & Wagnalls New Standard Dictionary of the English Language (1941):

**duplicator** * * * *n.* * * * **2.** A contrivance or device for making duplicates as of written or typewritten matter or a drawing. * * *

Oxford, New English Dictionary (1897):

**duplicator** * * * A machine for producing copies.

New Century Dictionary (1946):

**duplicator** * * * One that duplicates anything; a machine for making duplicates.

In the "Summaries of Tariff Information," volume 3, part 4, page 137, it is stated:

In the Geneva agreement the rate of duty on duplicating machines, which are used principally in business offices, was reduced from 25 to 15 percent ad valorem; the rate on presses and the other printing machinery covered by this summary was not affected by the agreement.

It would appear, therefore, that the trade negotiators in reducing the rate from 25 to 15 per centum ad valorem had in mind such machines as are defined by the above-cited authorities which, being more or less simple in construction, operation, and maintenance, have proven convenient and economical over the course of years in business offices for the purpose of producing multiple copies of typewriting, handwriting, and drawings.

The machine before us, however, is of a more complicated construction and operation. It is a three-cylinder machine and prints or duplicates by the offset method as opposed to "direct printing or duplicating where you impress the ink directly from the plate to the paper." No evidence has been offered as to the place of use of a Rotaprint machine, the usual purpose to which it is put, or how it is distinguished from a printing press, and we can not properly supply from imagination what is susceptible of proof.

Upon the meager record before us, we are of the opinion that the plaintiff has not sustained its dual burden of establishing that the decision of the collector was wrong and that its claimed classification is right. *United States* v. *Lilly & Co. and Parke, Davis & Co.,* 14 Ct. Cust. Appls. 332, T. D. 41970; *United States* v. *I. Magnin & Co., Inc.,* 21 C. C. P. A. (Customs) 77, T. D. 46394.

Therefore, we overrule the protest in all respects and affirm the decision of the collector of customs. Judgment will issue accordingly.